677 So.2d 1057 (1996)
STATE of Louisiana
v.
Ricky BROWN.
No. 95 KA 0755.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
*1061 Charles Genco and Ted Chapman, Amite, for Plaintiff-Appellee, State of Louisiana.
Robert Troyer, Amite, for Defendant-Appellant, Ricky Brown.
Before CARTER, PITCHER and KLINE,[1] JJ.
KLINE, Judge pro tem.
The defendant, Ricky Brown, was charged by bill of information with distribution of cocaine, in violation of LSA-R.S. 40:967A(1). He pled not guilty and, after trial by jury, was found guilty as charged. The defendant received a sentence of ten years at hard labor. Thereafter, the State filed a habitual offender bill of information; and the defendant subsequently admitted to being a second felony habitual offender. The trial court vacated the original sentence and resentenced the defendant to fifteen years at hard labor. He has appealed,[2] alleging eleven assignments of error,[3] as follows:
1. The trial court erred in denying the defendant's motion for a continuance.
2. The trial court erred in sustaining the prosecutor's objection to a question asked by defense counsel during voir dire examination.
3. The trial court erred in sustaining the prosecutor's objection to a question asked by defense counsel during voir dire examination and in disallowing defense counsel from conducting individual voir dire of prospective jurors.
4. The trial court erred in denying the defendant's motion for a continuance.
5. The trial court erred in denying the defendant's "Batson Motion."
6. The trial court erred in overruling defense counsel's objection to the evidence based upon the State's failure to lay a proper foundation by establishing a complete chain of custody.
7. The trial court erred in allowing State Exhibit 1 in globo to be introduced into evidence.
8. The trial court erred in denying the defendant's motion for a mistrial.
9. The evidence was insufficient to support the instant conviction.
10. The trial court erred in adjudicating the defendant to be a second felony habitual offender without advising him of the right to remain silent and of the right to a formal hearing wherein the State would have to prove the allegations of the habitual offender bill.
11. The defendant received ineffective assistance of counsel at the habitual offender proceeding.

FACTS
On the afternoon of June 23, 1989, while acting in an undercover capacity, Agent Anthony W. Stewart of the St. Helena Parish Sheriff's Office drove to the Hammond Project Housing area. Agent Stewart had been assigned to the Tri-Parish Task Force as an undercover narcotics agent and was accompanied by a confidential informant (C.I.). At approximately 3:30 p.m., Agent Stewart purchased two cocaine rocks from the defendant for $20.00. Although several persons in the housing project approached Agent Stewart and attempted to sell him cocaine, he purchased cocaine from the defendant because the C.I. knew the defendant's first and last name. The defendant was arrested in Ponchatoula on August 8, 1989.

ASSIGNMENT OF ERROR NO. ONE
In this assignment of error, the defendant contends that the trial court erred in denying *1062 his motion for a continuance. Immediately before the trial began, defense counsel made an oral motion for a continuance, based on the fact that the defendant was not properly dressed for trial. He requested time for the defendant to obtain a change of clothes. The trial court denied this oral motion for a continuance and ordered voir dire examination to begin.
La.C.Cr.P. art. 707 provides:
A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
The granting or denial of a motion for continuance rests within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of a clear abuse of discretion. State v. Spencer, 444 So.2d 354, 356 (La.App. 1st Cir.1983), writ denied, 488 So.2d 694 (La.1986). An oral motion for a continuance presents nothing for review on appeal. State v. Penny, 486 So.2d 879, 887 (La.App. 1st Cir.), writ denied, 489 So.2d 245 (La.1986). However, where the occurrences that allegedly make the continuance necessary arose unexpectedly, and the defense had no opportunity to prepare a written motion, an appellate court may review the denial of the motion. State v. Spencer, 444 So.2d at 356. Even assuming that the failure to file a written motion could be excused in this case, for the reasons which follow, we conclude that the trial court did not abuse its discretion in denying the defendant's oral motion for a continuance.
Compelling a criminal defendant to stand trial in readily identifiable prison attire over his express objection infringes upon his presumption of innocence and denies the defendant due process of law. State v. Brown, 585 So.2d 1211, 1212 (La.1991). In his brief to this Court, the defendant cites State v. Anderson, 603 So.2d 776 (La.App. 1st Cir. 1992), a case in which the trial court committed reversible error in denying defense counsel's request for a continuance so that the defendant could change out of prison-issued clothing. However, the instant case is distinguishable from Anderson because the defendant was not wearing readily identifiable prison clothing. Instead, he was dressed in sweat pants, a t-shirt, and tennis shoes (the clothes he apparently wore at the time of his arrest). After determining that the trial date had been set approximately twelve days earlier, concluding that the defendant had had ample time to obtain appropriate clothing, and observing that the defendant was not dressed in prison clothes, the trial court denied the requested continuance. Considering the circumstances, we find no abuse of discretion by the trial court in denying this oral motion for a continuance.
This assignment of error is meritless.

ASSIGNMENTS OF ERROR NOS. TWO AND THREE
In these assignments of error, the defendant contends that the trial court erred in sustaining two objections by the prosecutor during defense counsel's questioning of prospective jurors. The defendant concludes that these erroneous rulings deprived him of the right to a full voir dire examination of prospective jurors.
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. Art. 1, § 17. La.C.Cr.P. art. 786 provides that the trial court, the State, and the defendant shall have the right to examine prospective jurors. State v. Bell, 477 So.2d 759, 765 (La.App. 1st Cir.1985), writ denied, 481 So.2d 629 (La. 1986).
Voir dire examination is designed to discover grounds for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Williams, 560 So.2d 519, 523 (La.App. 1st Cir.1990). The defendant should be allowed to make such inquiries of prospective jurors as will enable him to secure his constitutional *1063 rights by eliciting facts which show grounds for challenges. His right to intelligently exercise cause and peremptory challenges may not be curtailed by the exclusion of non-repetitious voir dire questions which reasonably explore the prospective jurors' potential prejudices, predispositions, or misunderstandings relevant to the central issues of the particular case. State v. Bell, 477 So.2d at 766. The scope of voir dire examination is within the sound discretion of the trial court; its rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Williams, 560 So.2d at 523. A review of its rulings should be undertaken only on the record of the voir dire examination as a whole to determine whether or not a sufficiently wide latitude was afforded the defendant in examining prospective jurors. State v. Burton, 464 So.2d 421, 425 (La.App. 1st Cir.), writ denied, 468 So.2d 570 (La.1985).
During defense counsel's questioning of prospective juror Douglas Ellisor, the following colloquy occurred which forms the basis of the second assignment of error:
DEFENSE COUNSEL:
Q Well, let me ask you a general question. How do you feel about the drug problem in the United States?
A Exactly, what do you mean by that?
Q Well, that'sthat's what I want you to tell me? How do you feel about the drug problem, in your own words.
A UmmmI don't know exactly how to answer that. Because I'm not sure, you know, do I feel that there isthat the problemdo youare you asking, do I feel that the problem is getting worse or
PROSECUTOR: Your Honor, I'm gonna (sic) object to that kind of question in voir dire; we could spend hours on end
THE COURT: The objection is sustained.
PROSECUTOR:In requiring an answer to that question.
THE COURT: Mr. Troyer, I'm interested in whether or not we can find fair and impartial jurors here. I'm going to ask you to
DEFENSE COUNSEL: Your Honor, I object to the ruling of the Court; note the objection and assign it as error number two, please.
THE COURT: Objection noted, assignment noted.
During defense counsel's questioning of prospective juror, Anna Bennett, the following colloquy occurred, which forms the basis of the third assignment of error:
DEFENSE COUNSEL:
Q In thein the event, and the fact that thethe State is going to put certain policemen on the stand, would you be more likely to believe those policemen than you would be to believe a civilian witness put on by the defense?
A I'm sort of like she said; I mean who is gonna (sic) get up on the stand, aa police officer and lie about a situation?
Q Um-hum. Well, let me give you a hypothetical case, about putting the mother on the stand. Would you would you feel that the mother was lying because it was her son?
A I don't know, I'd have to listenI couldn'tI couldn't answer that.
Q In other words, that wouldn't be a problem for you, then?
A No sir.
Q Okay. And you don't believe that that anyone else wouldwell, let's forget the lying, but say, who would be the more accurate witness? Another hypothetical case: Suppose the State, through the policemen said that this thing happened at a certain time, and the mother said it happened at otherat some other time, who would youwould you feel that the police were more likely to be accurate?
PROSECUTOR: Your Honor, I'm gonna (sic) object, that's raising a hypothetical situation.
THE COURT: The objection is sustained.
PROSECUTOR: We have not heard any facts.

*1064 THE COURT: The objection is sustained.
BY THE COURT:
Ladies and gentlemen, I will ask one question of the entire panel:
Would any of youI've already asked the question
THE COURT: I'm not going to ask you. We've covered this in my questions already, Mr. Troyer, and
DEFENSE COUNSEL: Your Honor, I'd like
THE COURT:I'm not going to allow individualI'm not going to allow individual voire (sic) dire of these jurors, after they've already responded to the Court's question. Let's move on to another area.
DEFENSE COUNSEL: Your Honor, I have a right to delve intoto the questions the Court's asked and to try to get into the mind of the jurors. If I don't do that, I'm not doing my function
THE COURT: The objection is noted, assignment is noted, Mr. Troyer.
After considering defense counsel's questions in light of the above jurisprudence, we find no abuse of discretion by the trial court. In the first ruling reflected above, we find that defense counsel's question to Mr. Ellisor on the "drug problem in the United States" was clearly confusing to this particular prospective juror. Contrary to the defendant's argument, the trial court did not improperly curtail defense counsel's examination in this regard. In fact, at later points in the voir dire examination, defense counsel again raised the subject of the "drug problem" without objection.
In the second instance, the prosecutor's objection was directed toward the area of a prejudgment of supposed facts in the case. However, the trial court took the opportunity to explain that it had sufficiently covered the subject of the credibility of police officer witnesses in its earlier questioning of the prospective jurors and sustained the objection on this basis. Again, we find no error in the trial court's ruling. Arguably, the court did not exhaustively question the prospective jurors in this area, and defense counsel could have been expected to reopen the subject of how the prospective jurors would react to, and judge the credibility of, police officers. However, in doing so, defense counsel chose to pose a hypothetical question which, in fact, was very close to the facts of the case and then asked who the prospective juror would believe. "[V]oir dire examination may not encompass unlimited inquiry into all possible prejudices of prospective jurors, nor their opinions on the evidence (or its weight) to be offered at trial, nor hypothetical questions and questions of law which call for any prejudgment of supposed facts." State v. Thomas, 589 So.2d 555, 565 (La.App. 1st Cir.1991). (emphasis added). Under these circumstances, this particular hypothetical question posed by defense counsel was improper and, therefore, the prosecutor's objection on this basis was correctly sustained by the trial court.
These assignments of error are meritless.

ASSIGNMENTS OF ERROR NOS. FOUR, SIX, AND SEVEN
These assignments of error relate to the introduction of the State's physical evidence. In assignment of error number four, the defendant contends that the trial court erred in denying his oral motion for a continuance based upon the absence of Jerry Miller, the employee who received the evidence at the Louisiana State Police Crime Laboratory (LSPCL). In assignment of error number seven, the defendant contends that the trial court erred in allowing State Exhibit 1 in globo to be introduced into evidence over his objections.
On the morning of the second day of the trial, defense counsel requested a continuance when he discovered that Jerry Miller, the LSPCL employee who received the evidence at the crime lab, was absent. The prosecutor informed the trial court that Mr. Miller now lived in California and was unavailable for trial. Defense counsel objected, arguing that the State could not establish a proper chain of custody without Mr. Miller's testimony. The prosecutor responded that the State would establish the chain of custody through the testimony of witnesses, rather *1065 than relying upon the Scientific Analysis Report as prima facie proof under LSA-R.S. 15:499, et seq. Based upon the prosecutor's response, the trial court concluded that the trial should proceed in the absence of Mr. Miller and denied defense counsel's oral motion for a continuance.
Initially, we note that, because the trial had commenced the previous day, the defendant actually sought a recess, rather than a continuance. See La.C.Cr.P. art. 708. A motion for a recess is evaluated by the same standards as a motion for a continuance. State v. Dufrene, 461 So.2d 1263, 1268 (La.App. 1st Cir.1984). The decision to grant a recess is within the sound discretion of the trial court and will not be reversed in the absence of a showing of abuse of that discretion. State v. Mack, 435 So.2d 557, 564 (La.App. 1st Cir.), writ denied, 440 So.2d 727 (La.1983).
La.C.Cr.P. art. 709 provides:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
Neither in his argument before the trial court, nor in his brief to this Court, has the defendant indicated what testimony Mr. Miller would give or why it was important to the defense, except to speculate that, if there had been a problem with the receipt of the evidence at the LSPCL, or if some procedure had not been followed, his testimony thereon would be important. However, in light of the prosecutor's decision to establish the chain of custody and the test results by introducing testimony, rather than using the Scientific Analysis Report as prima facie proof under LSA-R.S. 15:499 et seq., we find no error in the trial court's ruling that the trial should proceed in the absence of Mr. Miller.
To be admitted at trial, demonstrative evidence must be identified. This identification can be visual, that is, by testimony at trial that the object exhibited is the one related to the case. Alternatively, the evidence can be identified by a chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered into evidence. State v. Pittman, 486 So.2d 895, 896 (La.App. 1st Cir.1986). In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected to the case. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence, rather than to its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. State v. Spooner, 550 So.2d 1289, 1304 (La. App. 1st Cir.1989), writ denied, 566 So.2d 394 (La.1990).
At the trial, Agents Stewart and Scott Durham testified regarding the chain of custody of the evidence and its delivery to the LSPCL. Sherry Demastes, a technician from the LSPCL, was qualified as an expert in analyzing narcotics. She explained the procedures used to preserve the chain of custody of the evidence at the LSPCL and to analyze it scientifically. Her testing revealed that the two rocks contained cocaine. She specifically stated that the evidence envelope, containing the cocaine, was sealed and showed no signs of tampering. Contrary to the defendant's argument, the agents' testimony provided an adequate chain of custody sufficient to establish a proper foundation for introducing State Exhibit 1 in globo.
Finally, the defendant also argues in his brief that there was no evidence introduced to establish the chain of custody of the evidence from the time it left the LSPCL until the time of trial. However, all of the defendant's objections at the trial concerned the absence of Mr. Miller and the alleged defect in the chain of custody resulting from a gap in the chain at the time of delivery of the evidence to the LSPCL. It is well settled that the grounds for an objection must be stated at the time the objection is made, *1066 and new grounds may not be urged for the first time on appeal. LSA-C.Cr.P. art. 841; L.C.E. art. 103A(1); State v. Clayton, 427 So.2d 827, 834 (La.1982) (on rehearing).
For the above reasons, these assignments of error are meritless.

ASSIGNMENT OF ERROR NO. FIVE
In this assignment of error, the defendant contends that, contrary to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the trial court erred by allowing the State to use peremptory challenges to exclude eight prospective jurors from serving on the jury. The defendant submits that he made a prima facie showing of purposeful discrimination of members of a minority race and was entitled to receive from the prosecutor valid racially neutral reasons for excluding these prospective jurors. In his brief, he attacks the race-neutral reasons expressed by the prosecutor for these challenges: "living in a bad neighborhood, being unemployed, smiling during the examination, being convicted of a D.W.I. 25 yrs. ago, being unmarried, etc.," and concludes that they were "insufficient." Thus, the defendant asserts that there was systematic exclusion of a minority race in this case, resulting in reversible error.
In Batson, the Supreme Court adopted a three-step analysis to determine whether or not the constitutional rights of prospective jurors have been infringed by impermissible discriminatory practices:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Hernandez v. New York, 500 U.S. 352, 358-359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) [citations omitted].
"The second step of this process does not demand an explanation that is persuasive, or even plausible." Purkett v. Elem, ___ U.S. ___, ___, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). Because a trial judge's findings pertaining to purposeful discrimination turn largely on credibility evaluations, such findings ordinarily should be entitled to great deference by a reviewing court. Batson v. Kentucky, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. Reasons offered to explain the exercise of peremptory challenges should be deemed race-neutral unless a discriminatory intent was inherent in those reasons. See Hernandez v. New York, 500 U.S. at 360, 111 S.Ct. at 1866.
Herein, the defendant first entered a "Batson motion" near the conclusion of voir dire examination of the first panel of fourteen prospective jurors. This initial Batson objection was prompted by the State's peremptory challenge of prospective juror, Patricia George. In response to this motion, without the trial court ruling on the prima facie issue, the prosecutor began to give race-neutral reasons for all peremptory challenges. At one point, the prosecutor also noted that he had already accepted four blacks on the jury. However, the jury selection was completed without defense counsel challenging the prosecutor's reasons. The next morning, prior to the trial court's preliminary remarks and the reading of the bill of information and the defendant's plea, defense counsel again raised the Batson issue and attacked the reasons previously expressed by the prosecutor in making his peremptory challenges. The trial court accepted the prosecutor's race-neutral reasons, noted that there were four blacks on the jury, found no systematic exclusion of black prospective jurors, and denied the objection.
Initially, we note that the defendant's Batson objection made after the jury selection was completed was untimely. See La.C.Cr.P. art. 841; State v. Jones, 593 So.2d 1301, 1317 (La.App. 1st Cir.1991), writ denied, 620 So.2d 868 (La.1993). Although the initial "Batson motion" was timely made, defense counsel did not attempt to rebut the prosecutor's race-neutral reasons for his challenges until jury selection had been completed. Furthermore, we note with particularity that the race of the prospective jurors *1067 was not established on the record, nor does the record indicate the total number of peremptory challenges used by the State or the defense (those prospective jurors excused by a peremptory challenge which was not the subject of a defense "Batson motion" were not identified as having been challenged by the State or the defense). The only indication of the race of any of the prospective jurors or the racial composition of the actual jury selected in this case is derived from the statements made by the court, defense counsel, and the prosecutor during voir dire.
After carefully reviewing the entire record of the voir dire proceedings, we find that the court's ultimate ruling as to all Batson objections was that the defendant had failed to meet his burden of establishing the requisite prima facie case of racial discrimination to trigger the second step of the Batson inquiry, articulation of race-neutral reasons. We find no abuse of discretion by the court in making this determination and in the court's further rulings accepting the prosecutor's race-neutral reasons and finding that there was no purposeful discrimination by the State in this case. Nor do we find anything in this record to otherwise show that the defendant proved purposeful racial discrimination by the State in its exercise of peremptory challenges in this case. Moreover, had discrimination been its purpose, the State apparently had unused peremptory challenges available which it could have used to exclude the four black jurors who apparently served on the jury. See State v. Brown, 522 So.2d 1110, 1115 (La.App. 1st Cir.1988), writ denied, 548 So.2d 1222 (La. 1989).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. EIGHT
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a mistrial.
During defense counsel's cross-examination of Agent Durham, the following colloquy occurred:
Q Whenwhen did you have actual contact with Ricky?
A When wasI think after he was brought to the sub-station, if I'm not mistaken.
Q On the day he was arrested, is that what you're saying?
A Yes sir.
Q Do you
A I believeI believe that was the first time.
Q When
A I didn't makeI don't believe I made the arrest on Ricky, I don't remember.
Q You knew him before that, though?
A Yeah, II wasI used to work in the jail, and I knew Ricky from the jail.
DEFENSE COUNSEL: May we approach the Bench?
THE COURT: Approach.
Thereafter, the trial court admonished the jury as follows:
THE COURT: Ladies and gentlemen, at the request of counsel, it comes to my attention that the witness made a comment concerning his knowledge of the defendant, and you are to disregard the witness' statement concerning the source of that knowledge and take no inference from that. You're not to make any speculation whatsoever, as toas to how that knowledge came about, because, certainly, there are many possible explanations, I will note for the record, but you are to disregard and take no adverse inference whatsoever from the witness' last comment from the stand.
Thank you very much. Proceed.
At the conclusion of the State's case, defense counsel requested a mistrial based on Agent Durham's response that he knew the defendant from the "jail." After considering the arguments of defense counsel and the prosecutor, the trial court denied the motion for a mistrial, explaining that there were many inferences which could have been drawn from the remark, only one of which was the possibility of another crime. The court concluded that an admonition to the jury to disregard the remark was sufficient to cure any possible prejudice.
*1068 La.C.Cr.P. art. 770(2) provides for a mandatory mistrial when a remark is made by the judge, the district attorney, or a court official within the hearing of the jury and such remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Dietrich, 567 So.2d 623, 634 (La.App. 1st Cir.), writ denied, 568 So.2d 1079 (La.1990). However, such a remark by a witness does not require a mistrial if the court is satisfied that an admonition to the jury is sufficient to assure the defendant of a fair trial. La.C.Cr.P. art. 771; State v. Odds, 430 So.2d 1269, 1272 (La.App. 1st Cir.1983). A police officer is not a court official within the meaning of La.C.Cr.P. art. 770. State v. Thompson, 597 So.2d 43, 46 (La.App. 1st Cir.), writ denied, 600 So.2d 661 (La.1992). Nevertheless, a prejudicial remark by an experienced police officer should be viewed with considerable concern as to the fairness of the trial and may require the granting of a mistrial, especially if the remark was precipitated by or should have been anticipated by the district attorney. The decision as to the necessity of granting a mistrial under these circumstances is left to the sound discretion of the trial court. State v. Douglas, 389 So.2d 1263, 1266 (La.1980).
La.C.Cr.P. art. 771(2) provides for a discretionary mistrial, as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. A mistrial under the provisions of La.C.Cr.P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Thompson, 597 So.2d at 46.
In his brief to this Court, the defendant states that the prejudicial effect of this remark denied him the right to a fair trial and constituted an adequate ground for a mistrial. We disagree. While this remark was improper, we do not consider it a deliberate attempt by Agent Durham to unfairly prejudice the defendant. Furthermore, this reference to knowing the defendant from the "jail" was not an unambiguous reference to a particular crime committed or alleged to have been committed by the defendant. See State v. Dietrich, 567 So.2d at 634; State v. Newman, 515 So.2d 548, 550-551 (La.App. 1st Cir.1987), writ denied, 581 So.2d 681 (La.1991); State v. Collins, 470 So.2d 553, 558 (La.App. 1st Cir.1985). The trial court decided that an admonition to the jury to disregard this remark was sufficient. Considering all of the above, we find no indication that the defendant was unable to obtain a fair trial because of this remark. Accordingly, we find no abuse of discretion in the trial court's ruling, denying the defendant's motion for a mistrial.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. NINE
In this assignment of error, the defendant contends that the evidence was insufficient to support his conviction. We note that, in order to challenge this conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See La.C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence, which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a *1069 rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984).
LSA-R.S. 40:967A(1) provides, in pertinent part:
... it shall be unlawful for any person knowingly or intentionally:
To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II; ....
Cocaine is a controlled dangerous substance listed in LSA-R.S. 40:964 Schedule IIA(4).
In his brief to this Court, the defendant does not contest the fact that a drug transaction occurred or that the substance tested at the LSPCL contained cocaine. Instead, he again raises the issue of the lack of a proper chain of custody and concludes that the cocaine should not have been admitted into evidence at the trial. However, this issue was considered and rejected in our treatment of assignments of error numbers four, six, and seven.
The defendant also raises the issue of the identification. Where the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the State is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Royal, 527 So.2d 1083, 1086 (La.App. 1st Cir.), writ denied, 533 So.2d 15 (La.1988). The uncontradicted identification testimony of an undercover narcotics officer is sufficient to support the defendant's conviction of distribution of cocaine. See State v. Pittman, 486 So.2d 895, 897 (La.App. 1st Cir. 1986).
In the instant case, Agent Stewart identified the defendant in court as the person from whom he purchased cocaine during this particular drug transaction. This direct, uncontroverted evidence, identifying the defendant as the perpetrator of this offense, was sufficient to negate any reasonable probability of misidentification. While the defendant's mother testified that the defendant was living with her in Ponchatoula on the date of his arrest (August 8, 1989) and claimed that he had resided there for several months prior to that date, the defense offered no alibi testimony, or other evidence to contradict Agent Stewart's testimony identifying the defendant as the person from whom he purchased two cocaine rocks in Hammond on the afternoon of June 23, 1989. The instant guilty verdict indicates that the jury accepted the testimony of the State's witnesses. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d at 38.
After a careful review of the record, we believe that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt that the defendant committed the offense of distribution of cocaine.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. TEN
In this pro-se assignment of error, the defendant contends that the trial court failed to advise him of the right to remain silent and of the right to a formal hearing wherein the State would have to prove the allegations of the habitual offender bill.
This Court has held that, before a defendant pleads guilty or stipulates to the charges in an habitual offender bill of information, the trial court must advise the defendant of the specific allegations contained in the habitual offender bill of information, his right to be tried as to the truth thereof, and his right to remain silent. See LSA-R.S. 15:529.1D. Otherwise, such failure on the part of the trial court constitutes reversible patent error, requiring that the habitual offender adjudication and sentence be vacated. See State v. Griffin, 525 So.2d 705, 707 (La. App. 1st Cir.1988). In the instant case, contrary to the defendant's assertions in brief, *1070 the trial court clearly advised him of the specific allegations in the habitual offender bill of information, the right to a hearing, and of the right against self-incrimination prior to the court's acceptance of defendant's admission to being a second felony habitual offender.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. ELEVEN
In this pro-se assignment of error, the defendant contends that defense counsel was ineffective for allowing the defendant to admit the allegations in the habitual offender bill. First, he argues that counsel should have noted the trial court's failure to advise him of the right to remain silent and of the right to a formal hearing wherein the State would have to prove the allegations of the habitual offender bill. This first allegation is meritless, as noted in our treatment of the previous assignment of error. Second, the defendant contends that counsel failed to sufficiently investigate the predicate offense listed in the habitual offender bill (a 1987 guilty plea to distribution of marijuana). Specifically, he argues that the predicate guilty plea was defective for several reasons and, therefore, his plea was not entered knowingly and voluntarily. The defendant asserts that counsel should have discovered the defects in the predicate guilty plea and advised him that it could not be used for habitual offender enhancement.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Teeter, 504 So.2d 1036, 1039-1040 (La.App. 1st Cir.1987).
The above allegations, concerning counsel's failure to investigate the predicate guilty plea, cannot be reviewed on appeal because the record does not disclose sufficient evidence to demonstrate whether or not the allegations have merit. Initially, we note that the record does not contain any evidence relating to the predicate guilty plea. While the defendant has attached to his pro-se supplemental brief what appears to be a transcript of the September 8, 1987, predicate guilty plea proceeding, this Court has no authority to receive or review evidence not contained in the trial court record. State v. Swan, 544 So.2d 1204, 1209 (La.App. 1st Cir.1989). Furthermore, we note that matters relating to counsel's pretrial investigation and/or preparation could not possibly be reviewed on appeal. See State v. Martin, 607 So.2d 775, 788 (La.App. 1st Cir.1992). Accordingly, the second allegation is not subject to appellate review.

PATENT ERROR
We note the following patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court gave the defendant credit for time spent in actual custody prior to sentencing. Such an allowance of credit is mandatory. La.C.Cr.P. art. 880. Accordingly, we find patent sentencing error and amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of his sentence. See State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is to be given credit for time served.
CONVICTION AND HABITUAL OFFENDER ADJUDICATION AFFIRMED.
SENTENCE AFFIRMED AS AMENDED AND REMANDED WITH ORDER.
NOTES
[1] Judge William F. Kline, Jr., is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The trial court granted defendant's motion for an out-of-time appeal on June 25, 1993.
[3] Defense counsel filed and briefed nine assignments of error (nos. 1-9). The defendant subsequently filed a pro-se supplemental brief, containing two additional assignments of error relating to the habitual offender proceedings (nos. 10 & 11).