JaSHORTESS, Judge.
Willie E. Spikes (defendant) was charged by bill of information with three counts of distribution of cocaine, La. R.S. 40:967. After trial by jury, he was convicted on all counts. The court sentenced him to 150 months imprisonment at hard labor on the first count. On the second and third counts, the court sentenced defendant to sixty months imprisonment at hard labor on each count, to be served concurrently with each other but consecutively to the sentence on the first count. Defendant was given credit for time served.
Defendant was granted an out-of-time appeal. He did not, however, file formal assignments of error as required by Louisiana Code of Criminal Procedure article 844. Since defendant articulated three assignments of error in his appellate briefs,[2] we will consider the merits of these assignments of error, per State v. Galliano, 648 So.2d 911 (La.1995), citing Code of Criminal Procedure article 916(1) and (5).
Defendant has assigned these errors: (1) that the trial court erred in refusing to order the State to disclose the identity of its confidential informant, (2) that the trial court erred in admitting into evidence “personnel files” of one of the State’s witnesses, and (3) that the evidence was insufficient to prove beyond a reasonable doubt that he committed the offenses with which he was charged.
SUFFICIENCY OF THE EVIDENCE
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. If the entirety of the evidence, including erroneously admitted evidence, is insufficient to support the conviction, the defendant must be discharged as to that crime, which would moot the other as *1366 signments of error. State v. Hearold, 603 So.2d 731, 734 (La.1992).
Islf the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, however, the defendant is not entitled to an acquittal. Instead, the reviewing court must then consider the assignments of trial error to determine whether he is entitled to a new trial. If the reviewing court determines there has been prejudicial trial error, the defendant must receive a new trial. He is not, however, entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. Lockhart v. Nelson, 488 U.S. 33, 40-41, 109 S.Ct. 285, 290-291, 102 L.Ed.2d 265 (1988); State v. Hearold, 603 So.2d at 734.
As defendant has alleged the evidence herein was insufficient to support his convictions, we must first review the entirety of the evidence, both admissible and inadmissible.
Defendant and his wife, Toñita Abrams Spikes (Abrams), were charged in a joint bill of information with selling crack cocaine once on August 4, 1992, and twice on August 14, 1992, in Bogalusa. Defendant and Abrams were not married at the time the offenses allegedly were committed. The purchaser of the drugs was Gordon Parker, an itinerant “drugbuster.” Parker, a black man, worked undercover with various law enforcement agencies, volunteering (for a daily fee and mileage, paid in cash) to go into predominantly black areas and buy drugs.[3] He telephoned the Bogalusa police chief and offered his services, which were accepted. Parker testified he lived in Terrytown (Gretna), Louisiana, and commuted to Bogalusa daily for approximately eighteen days, beginning in late July, 1992. During that time he made drug buys resulting in the arrests of 75 people on 90 to 95 charges.
Three police officers comprised the Boga-lusa Drug Task Force: Mike Edwards and Ed Gomez of the Bogalusa Police Department and Detective David Feinberg of the Washington Parish Sheriffs Office. Edwards was the coordinator. On each evening Parker worked with the task force, the officers searched Parker’s person and vehicle, gave him a police radio to place under the seat of his car and a specific amount of money, and directed him where to go to buy drugs. The officers |4followed Parker but stayed far enough away that they would not be seen and recognized. They were not close enough to see or hear the transactions but relied solely on Parker. Parker’s transactions were not recorded on videotape or audiotape or by camera, and he did not wear a body microphone, commonly called a “wire.” After each transaction, Parker radioed the officers, then met them in some secluded area to deliver the drugs he had purchased. At that meeting he would provide the officers with the name and a brief description of the person from whom he had purchased the drugs.
Parker testified that on August 4,1992, he drove to Second Avenue and parked in a bar’s parking lot. Shortly thereafter defendant and Abrams arrived in a black truck. Parker bought one rock of cocaine from defendant for $100.00. He then left, contacted the task force, and gave the cocaine to the officers ten minutes later. He stated he told Gomez defendant’s name and the place and approximate time of the drug purchase. He also provided a description of the truck the dealer was driving, although he was unable to obtain a license number. Gomez recorded this information on the envelope containing the cocaine.
Parker further testified that on August 14, 1992, he bought three rocks of crack cocaine from Abrams for $30.00. He stated Abrams was seated in the passenger seat of the black truck, but defendant was not present. Parker returned later that night and bought two more rocks from defendant and Abrams for $20.00. After each transaction he met with the officers, turned over the evidence, and described the dealers and their vehicle, including the license number.
Parker stated that before purchasing drugs from defendant, he heard other people *1367 can him “Willie” or ‘Wild Bill.” Edwards and others told him ‘Wüd Bül” was Willie Spikes. Parker unequivocally identified defendant in court as the man from whom he made the three purchases. He stated he has never made a misidentification.
After each purchase, the officers drove through the area looking for the persons and truck described by Parker. A Heense check showed the truck was owned by defendant. Edwards assumed defendant was in the area of the drug buy because he saw his truck, but he did not see defendant. Gomez and Fein-berg alsojjjsaw defendant’s truck. Although they were riding in the same vehicle on August 14, Gomez testified they did not see defendant, while Feinberg said he saw him standing in the Fourth Street and Second Avenue area.
Edwards stated defendant’s father owns a bar on the street where defendant’s truck was seen. Kasandra Ishman corroborated that fact and testified she has seen defendant working in that bar.
Parker described defendant to the officers as a medium-complexioned black man of medium build, about 5'9" to 5'10" tall, weighing about 180 pounds, with a “low crop” hair style and wearing a thin gold chain. He did not describe defendant’s clothing, and he failed to note defendant’s mustache. Parker bought drugs from three other dealers on August 14, and each was described simply as a black man, medium build, about 5'9" to 5'10" tall, weighing about 180 pounds.
Defendant sought to impeach Parker’s credibility through the testimony of Ishman, a cocaine addict who testified she had not used cocaine for eight months before the trial. During his cross-examination by defense counsel, Parker denied knowing Ish-man and stated he did not recall ever seeing her before she walked into the courtroom. Ishman testified, however, that during the time Parker was working with the task force, he provided her with crack cocaine in exchange for oral sex. Ishman stated that during the two weeks Parker was in Bogalu-sa, he took her to a motel twice, and on three or four other occasions she “took care of him” while he drove around.
Before Parker’s credibility was attacked— before Parker even testified — the State bolstered his credibility through the introduction of letters recommending Parker for employment. The prosecutor referred to these letters as Parker’s “personnel file” from the Bogalusa Police Department.
The standard of review for the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In the absence of internal contradiction or irreconcilable conflict with | (¡physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Gipson, 26,433, p. 2 (La.App.2d Cir. 10/26/94), 645 So.2d 1198, 1200. It is the function of the jury, and not the appellate court, to assess the credibility of witnesses. State v. Trosclair, 443 So.2d 1098, 1106 (La.1983), cert, dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984).
As to Count 2, the first sale made on August 14,1992, evidence of defendant’s guilt is sorely lacking. Parker testified Abrams sold the cocaine to him, and defendant was not present. The only evidence even connecting defendant with that sale is that Abrams was sitting in defendant’s truck at the time she made the sale. No rational juror could have found the State had proven the elements of distribution of cocaine beyond a reasonable doubt based on that fact. Thus, defendant’s conviction on Count 2 must be reversed.
As to the remaining counts, however, Parker’s testimony clearly established the essential elements of the crime of distribution of cocaine by defendant. The only issue to be resolved is identification. Where identity is the key issue, rather than whether an offense was committed, the State is required to negate any reasonable probability of mis-identification. State v. Long, 408 So.2d 1221, 1227 (La.1982); State v. Brown, 95-0755, p. 17 (La.App. 1st Cir. 6/28/96), 677 So.2d 1057, *1368 1069. The uncontradieted identification testimony of a trained undercover narcotics officer is usually sufficient to support a defendant’s conviction of distribution of cocaine. State v. Brown, 96-0755, pp. 17-18, 677 So.2d at 1069; State v. Gipson, 26,433, p. 6, 645 So.2d at 1202.
Defendant relies on State v. Gipson, wherein the second circuit held the uncorroborated testimony of a narcotics officer failed to negate any reasonable probability of mis-identification. While some of the facts in Gipson are similar to those herein, the following evidence tended to show misidentification in that case: the identifying narcotics officer had never seen Gipson before the buy and did not know him by name; the officer testified there was good lighting in the room in Gipson’s apartment where the buy allegedly took place, while Gipson testified there |7were no lights in the room; Gipson took the stand and denied selling drugs to the officer; and the officer, who stated he had not seen Gipson since the buy eight months before the trial but unequivocally identified him at trial, failed to notice Gipson’s weight had increased from 145 pounds at time of arrest to 195 pounds at time of trial.
In this case, Parker testified he had seen defendant before the buys and knew his name. The only differences pointed out at trial between Parker’s original description and defendant’s appearance was defendant’s mustache and his complexion. Parker failed to note the mustache, and he described defendant, who had a dark or “medium dark” complexion, as “medium complected.” Parker unequivocally identified defendant in court (even though two and one-half years had elapsed since the drug sale). Defendant’s truck was seen by all three police officers in the vicinity of the drug buy. Although Ishman testified defendant sometimes worked in a bar near where his truck was seen, no one testified defendant was working on the nights of August 4 and August 14,1992.
Taking this evidence as a whole, we believe rational jurors, viewing the evidence in the light most favorable to the prosecution, could have found the State had proven beyond a reasonable doubt that defendant was the person from whom Parker purchased cocaine on August 4 and August 14, 1992. Thus, this assignment of error has no merit as to Counts 1 and 3.
EVIDENTIARY ERRORS

The personnel ñle

Defendant contends the trial court erred in admitting photocopies of letters recommending Parker for employment because those letters are hearsay and no exception to the hearsay rule applied. The State contends the letters are not hearsay because they were not offered to prove the truth of the matter asserted. In the alternative, the State argues that if the letters are hearsay, they are excepted from the hearsay rule under Louisiana Code of Evidence article 803(8)(a) as “[r]ecords, reports, statements, or data compilations ... of a public office or agency.”
IsThe State’s exhibit consisted of a manila folder with “1992 ” handwritten on the tab. The folder contained photocopies of six laudatory letters from various Mississippi law enforcement agencies, each addressed “To Whom It May Concern” and dated between October 1991 and February 1992. The letters refer to Parker’s undercover work and describe him as a “valuable asset to any law enforcement agency,” “well qualified,” and “professional.” One letter states: “Due to Mr. Parker’s excellence in this undercover operation all of these arrest[s] are expected to receive convictions.” Noticeably absent from this so-called personnel file is anything connecting it to the Bogalusa Police Department, such as an employment application, performance reports, pay records, or any other document referring to the Bogalusa Police Department.
The folder was introduced during Edwards’ testimony. He stated he received the file from Edna Waseom, who maintains records at the police department and is the chief of police’s secretary. When asked if the folder was Parker’s personnel record, Edwards replied, “This is some of it_” Neither Waseom nor the purported authors of the letters testified.
*1369 Defendant objected to the introduction of these documents on the grounds that they were hearsay and that no foundation was laid to support an exception to the hearsay rule. Without reasons, the trial court overruled the objection. We must first determine whether they were hearsay, which is defined by the Code of Evidence as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” La.Code Evid. art. 801(C).
The authors of these letters did not testify and thus the letters are hearsay unless they were not offered to prove the truth of the matter asserted. The State asserts in its brief that the letters were not offered to prove Parker’s level of knowledge or skill but were offered simply to show he had worked with other law enforcement agencies in the past. We find this argument unpersuasive. The jury’s decision in this case turned ultimately on Parker’s credibility and his identification skills. Parker’s past employment was not an issue. The State’s only plausible reason to offer these letters was to prove Parker’s skill and improve his credibility.
IgAs these letters are hearsay, they could be admitted only if the State showed they fit one of the statutory exceptions. La. Code Evid. art. 802. Defendant contends the State failed to provide a proper foundation to admit them under the business records exception. La.Code Evid. art. 803(6). But the State contends it was not attempting to show they were business records. It argues instead they were public records that are admissible under Code of Evidence article 803(8)(a) because they are “a record or a report of Vernon (sic) Parker’s activities with the police.”
The public records exception does not apply to all government documents but is limited to the three categories in subsection (a). La.Code Evid. art. 803(8), Official Comments. These categories are (1) records of an agency’s “regularly conducted and regularly recorded activities,” (2) “[m]atters observed pursuant to duty imposed by law and as to which there was a duty to report,” and (3) conclusions of fact reached by a governmental agency resulting from an investigation made pursuant to legal authority. Letters of recommendation do not fit into any of these three categories. Thus, the trial court erred in admitting them into evidence.
Even had they been admissible, they could not have been admitted before Parker had been sworn and his credibility attacked. La. Code Evid. art. 607(B). Despite this rule, they were admitted during the testimony of Edwards, the State’s first witness.

The Jefferson Parish documents

When defense counsel cross-examined Parker regarding his qualifications and his work with' the Jefferson Parish Sheriff’s Office (JPSO), Parker testified he had a letter proving he was a commissioned police officer and a JPSO performance evaluation. During Parker’s redirect testimony, the State attempted to introduce those documents, marked “State Exhibit 6.” Defendant objected that the State had laid no foundation, and the court sustained the objection. Just before the State rested, however, the prosecutor exhibited to the jury all of its marked evidence, including the excluded Exhibit 6. Defendant contends, and we agree, that this was error.

_[ioDid these evidentiary errors prejudice defendant?

The erroneous admission or exhibition to the jury of hearsay requires reversal of a criminal conviction only when there is a reasonable possibility the evidence might have contributed to the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Wille, 559 So.2d 1321, 1332 (La.1990). Therefore, we must determine whether the improper admission of the letters of recommendation and the improper exhibition of the Jefferson Parish employment documents was prejudicial to defendant in that they might have contributed to his conviction.
The State’s case hinged on Parker’s credibility. Parker was the only witness who testified defendant sold cocaine. Only one of the three police officers saw defendant in the area after the alleged drug deals. The State’s witnesses saw defendant’s truck in *1370 the area, but this proved little in light of Edwards’ and Ishman’s testimony that defendant’s father owned a nearby bar. Parker’s identification of defendant was called into question by evidence that he gave virtually identical descriptions of the four men he allegedly bought drugs from on August 14, 1992. Finally, defendant presented the testimony of Ishman, which impugned Parker’s credibility. Parker denied knowing Ishman or even seeing her before the trial, but she testified that on several occasions while he was working undercover in Bogalusa he gave her cocaine in exchange for sex, both in his car and at a local motel.
The jury could have decided Parker was a credible witness without relying on the improper evidence, but that is not enough to sustain the conviction. Rather, the issue is whether it actually rested its verdict on properly admitted evidence, independently of the improper evidence. State v. Tucker, 619 So.2d 1076,1080 (La.App. 1st Cir.1993). The admission and exhibition of the improper evidence is harmless only if its effect is comparatively minimal so that it can be said it did not contribute to the verdict rendered. Yates v. Evatt, 500 U.S. 391, 405, 111 S.Ct. 1884,1893-1894,114 L.Ed.2d 432 (1991).
The letters of recommendation admitted into evidence before Parker even testified portrayed him as an excellent, well-qualified, highly professional undercover | nofficer whose work resulted in convictions. The Jefferson Parish documents were not included in the record on appeal, and thus our only information about their contents is Parker’s description. Based on that description, however, we conclude they also must have served to bolster Parker’s credibility.
While the verdict could have been the same without this evidence, we find the State failed to prove beyond a reasonable doubt that the improperly admitted and exhibited evidence which bolstered Parker’s credibility did not contribute to the jury’s finding of guilt. We thus must reverse defendant’s convictions on Counts 1 and 3, vacate his sentences, and remand this case to the district court for a new trial on those counts.
Because of our reversal on this issue, we pretermit discussion of defendant’s assignment of error regarding the State’s failure to disclose the identity of its confidential informant.
CONVICTIONS REVERSED; SENTENCES VACATED; REMANDED FOR NEW TRIAL ON COUNTS 1 AND 3.

. Defendant's trial counsel filed a brief assigning two errors, and another attorney filed a brief urging a third assignment of error.

. Bogalusa had no black detectives in 1992, and its white detectives were well known to the local drug dealers.