560 So.2d 519 (1990)
STATE of Louisiana
v.
Dennis WILLIAMS.
No. 89 KA 0745.
Court of Appeal of Louisiana, First Circuit.
April 10, 1990.
*520 William R. Campbell, Jr., New Orleans, for appellee.
John J. Williams, Jr., Asst. Dist. Atty., Covington, for appellant.
George C. Ehmig, Covington, for defendant.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Dennis Williams was charged by bill of information with possession of marijuana with intent to distribute, a violation of LSA-R.S. 40:966 A. He pled not guilty and elected to be tried by a jury, which convicted him as charged. Subsequently, on December 16, 1988, defendant was sentenced to imprisonment at hard labor for a term of twenty-five years. Thereafter, on December 19, 1988, the trial court amended defendant's sentence by reducing the term of defendant's imprisonment from twenty-five years to eighteen years. On appeal, defendant urges six assignments of error:
*521 1. The trial court committed reversible error in forbidding defendant to explain to a prospective juror the difference between a civil and a criminal trial by indicating a person's liberty is at stake in a criminal trial, while at the same time permitting the prosecutor to state that defendant might receive a suspended sentence or probation.
2. The trial court committed reversible error in denying defendant's motion for a mistrial after the prosecutor referred in his opening statement to an inculpatory statement or confession allegedly made by defendant.
3. The trial court committed reversible error by denying defendant's request that the statutory provisions relative to sentencing for the charged offense be read to the jury.
4. The trial court committed reversible error by denying defendant the right to argue to the jury relative to the possibility of a mistaken identification.
5. The trial court imposed an excessive sentence.
6. The trial court committed reversible error by amending defendant's original sentence without defendant or defense counsel being present at the time of the amendment and absent a waiver of defendant's presence.
In brief, defendant expressly abandoned assignment of error number three.
The record reveals that on the night of March 7, 1987, St. Tammany Parish Sheriff's Officer J.C. Hymel was working with several other officers in an undercover narcotics operation in the Covington area. Two female confidential informants (C.I.'s) were with Hymel in an unmarked police pickup truck.
At about 11:30 p.m., Hymel and the C.I.'s drove past the Ponderosa (a bar) where they came upon several individuals walking on the street. One of those individuals, whose name was subsequently determined to be Dennis Williams, became engaged in a conversation with Hymel and the C.I.'s At the time, defendant was introduced to Hymel as "Popatar."
Defendant got into Hymel's vehicle and directed Hymel to a nearby parking lot behind the Pheasant, another bar. Hymel parked his truck in that parking lot. Hymel and the C.I.'s continued to talk to defendant. Defendant asked them what they were doing in the area. They responded that they were looking for a "good time." Defendant asked them if they were looking for narcotics. At that point, Hymel asked defendant what he was talking about and what he had; defendant answered that he had some marijuana. Hymel told defendant that he would be interested in some marijuana if it was good and if it sold for a "decent" price. Defendant reached inside his pocket and pulled out a plastic baggie containing green vegetable matter. Defendant then removed about one-eighth of an ounce of the contents of the baggie and placed it inside another baggie for Hymel. Hymel and defendant negotiated a price of ten dollars for the baggie defendant had prepared for Hymel.
The transaction was thus completed with Hymel taking possession of the baggie and defendant exiting Hymel's vehicle. Hymel observed defendant proceed down the street to his vehicle, a truck, which was parked around the corner. Hymel got a description of defendant's truck. Later that evening, Hymel saw defendant again. Defendant was in the same truck and Hymel got the truck's license plate number. At that time, Hymel and defendant "spent some time together."
After the transaction was concluded, Hymel met his police supervisor and gave him the license plate number of defendant's truck and the baggie he had bought. Using the license plate number Hymel had obtained from defendant's truck, the police determined that the vehicle was registered in defendant's name.
On the following day, Hymel again met with his supervisor; from a photograph of defendant, Hymel identified defendant as the person from whom he had purchased the baggie of vegetable matter. Later, at trial, Hymel again identified defendant as the person who had sold him the baggie.
*522 At trial, Kenneth Savignol, another narcotics officer, testified that he had observed Hymel, the C.I.'s, and another male in Hymel's truck on the night in question when they were parked in the parking lot near the Pheasant bar. Savignol drove "right past" Hymel's vehicle, and he took care in looking at the other male to "plant a memory" for later identification of the individual. In court, Savignol positively identified defendant as the other male.
Scientific tests of the contents of the baggie Hymel had purchased from defendant revealed the contents to be marijuana. At the conclusion of the undercover drug operation, defendant was arrested during the "roundup" which followed.
ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant contends that the trial court committed reversible error in forbidding defendant to explain to a prospective juror the difference between a civil and a criminal trial by indicating a person's liberty is at stake in a criminal trial, while at the same time permitting the prosecutor to state that defendant might receive a suspended sentence or probation.
The record reflects that voir dire examination of prospective jurors was conducted in panels of prospective jurors. After voir dire examination of the first two such panels, eleven members of the jury had been selected and sworn as jurors. Thereafter, a third panel of six prospective jurors was examined by the court, the state and defense counsel. From this panel, the twelfth member of the jury and one alternate were selected.
During defense counsel's questioning of the third panel of prospective jurors, the following exchange occurred:
[BY DEFENSE COUNSEL ROY K. BURNS]:
Now, we have all by virtue of experience through LA Law and other things have heard of the civil law, and they juice things up by putting two or three civil law segments in each. Do you understand that that's different than the criminal law as a general proposition? That in a civil case, the burden of proof upon the mover, and that is called plaintiff, in this particular case is called the State, in a civil case, the winner is just more probable than not, fifty-one percent type thing? You're not in a civil case, obviously. This is a criminal case where someone's liberty is at stake for a long period of time. We understand that. And that by virtue of those civil liberties
BY MR. WILLIAMS: Your Honor, I object to that, because under this sentence he may get no time, he may get probation. And therefore, that's a misrepresentation.
BY THE COURT: We're not going to talk about penalties, Mr. Burns.
BY MR. BURNS: You're not going to let me pursue that question?
BY THE COURT: No, sir. That's the province of the Court, Mr. Burns. We have discussed that in other trials.
BY MR. BURNS: We weren't talking specific sentence, but I'm going to object for the record in this matter. Thank you. I will move on.
The exchange quoted above reveals that the prosecutor's objection to defense counsel's questioning of the third panel was only as to defense counsel's questioning in regard to the possible penalty for the instant offense and not to defense counsel's questioning in regard to the difference between a civil and a criminal trial, that (in apparently sustaining the state's objection) the trial court's ruling only barred any further questioning by defense counsel as to penalties, and that defense counsel's only objection was a general objection to the trial court's ruling.
Defense counsel claims that the trial court should have admonished the jurors to ignore the prosecutor's remarks concerning possible probation and that, in the alternative, the trial court should have ordered a mistrial. However, LSA-C.Cr.P. art. 841 states that an irregularity cannot be availed of after verdict unless it was objected to at the time of its occurrence. Herein, defense counsel neither objected to the prosecutor's remarks concerning possible *523 probation nor requested an admonition or a mistrial based on those remarks. Thus, absent either a contemporaneous objection to the alleged improper prosecutorial remarks or a request for a mistrial or an admonition, defendant can not now obtain any relief based on the alleged improper remarks. See State v. Lucky, 453 So.2d 1234, 1239-1240 (La.App. 1st Cir.), writ not considered, 459 So.2d 529 (La.1984). Moreover, in our view, the remarks of the prosecutor were not improper in the context in which they were made, i.e., the articulation of the state's objection; even were we to assume, arguendo, impropriety of the remarks, we conclude that any such impropriety would not have risen to a level sufficient to affect the substantial rights of defendant. See LSA-C.Cr.P. art. 921.
We now turn our attention to the trial court's ruling barring questioning as to possible sentencing. Voir dire examination is designed to discover grounds for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Creel, 540 So.2d 511, 512 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). The scope of the voir dire examination is within the sound discretion of the trial court, and its rulings will not be disturbed on appeal in the absence of clear abuse of discretion. Creel, 540 So.2d at 512.
After reviewing the entire voir dire examination in the instant case, we find no abuse of discretion on the part of the trial court. Defendant was afforded wide latitude in his examination of prospective jurors. The failure to allow questioning of jurors on an issue such as sentencing, in which they have no participation, is not error. See Creel, 540 So.2d at 512.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. TWO:
In this assignment, defendant asserts that the trial court erred in denying defendant's motion for a mistrial, after the prosecutor referred in his opening statement to an inculpatory statement or confession allegedly made by defendant.
The record reflects that, during the prosecutor's opening statement, the prosecutor proceeded to outline the circumstances of the instant offense which he intended to prove. In that regard, the prosecutor related how Hymel and confidential informant(s) went to an area where drug sales were frequently made; how they came upon defendant; how defendant approached Hymel's vehicle, conversed with Hymel and got inside Hymel's vehicle; and how defendant, the informant(s), and Hymel went to an area where people park to buy and sell drugs. Thereafter, the prosecutor stated the following:
When they [Hymel, the informant(s) and defendant] got to that area, he and the police officer [Hymel] negotiated the purchase of marijuana. The defendant said, What are you looking for? I have some weed. The undercover officer [Hymel] said
Thereupon, defense counsel entered an objection and asked that the jury be retired from the courtroom. The record reflects that, at that juncture of the trial, a bench conference was held outside the hearing of the jury. During the conference, defense counsel objected that (in the above quoted statement) the prosecutor had referred to an inculpatory statement in violation of LSA-C.Cr.P. art. 767; on that basis, defense counsel moved for a mistrial. The trial court ruled that it interpreted the codal article as referring to an inculpatory statement made post-arrest, and the court admonished the prosecutor not to make reference in his opening statement to any other statements made by defendant. Thereafter, prior to allowing the prosecutor to resume his opening statement, the trial court admonished the jury to disregard any reference in the opening statements to statements made by any party.
LSA-C.Cr.P. art. 767 prohibits the state in its opening statement from adverting in any way to a confession or inculpatory statement made by the defendant. The term "inculpatory statement" as used in LSA-C.Cr.P. art. 767 has been interpreted by the jurisprudence to refer to the out-of-court admission of incriminating facts made by a defendant after the crime has *524 been committed. State v. Michel, 422 So.2d 1115, 1117 (La.1982). Herein, because the statement was made during the commission of the instant offense, the statement formed a part of the res gestae. References to the res gestae during opening statement are neither prohibited nor improper. State v. Jackson, 450 So.2d 1053, 1055 (La.App. 1st Cir.1984), writ denied, 494 So.2d 321 (La.1986).
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. FOUR:
In this assignment, defendant contends that the trial court committed reversible error by denying defendant the right to argue to the jury relative to the possibility of a mistaken identification of him as the perpetrator. Defendant submits that the issue of mistaken identity was essential to his defense and that the denial of his right to argue that issue violated his right to assistance of counsel for his defense as guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 13, of the Louisiana Constitution.
The record reflects that, during defense counsel's delivery of his closing argument to the jury, defense counsel devoted a large amount of his presentation to the alleged misidentification of defendant by Officers Hymel and Savignol. Defense counsel's argument in that regard included counsel's assertions that the officers worked long hours, handled numerous cases and confused identities of defendants and the facts in individual cases. During his closing remarks to the jury, defense counsel questioned the officers' testimony as to the circumstances under which they had viewed defendant at the time of the crime, including the length of the period of time during which they had had an opportunity to view defendant, and the lighting conditions under which they had viewed defendant.
In his closing statement, defense counsel continued to address the issue of identification as follows:
To elicit identification evidence, it's particularly riddled with enumerable [sic] dangers, variable factors which may seriously, even crucially, deprecate a fair trial. The tragedies of eyewitness identifications are well known. The annals of our criminal law are rifled with instances of mistaken identification.
At this juncture of defense counsel's closing argument, the prosecutor objected to the excerpt of defense counsel's closing argument quoted above as material not in evidence; and the following exchange then occurred:
BY THE COURT: Mr. Burns [defense counsel], this is highly improper argument to the the [sic] jury. Closing argument is for you to present your contentions to the jury. You do not read law or anything else to the jury.
BY MR. BURNS: Note my objection, Your Honor.
BY THE COURT: Note your objection and complete your argument, please.
BY MR. BURNS: What I would like to do is give to the Court United States Supreme Court Justice Brannon's [sic] interpretation of eyewitness identification that I would memorize and read to the jury to prove my accuracy, if there would be any questions.
BY THE COURT: It is not for memorization. This is not a memory test for you, Mr. Burns. It is simply for you to sum up your case and give your contentions of the case, not your opinions on any portions of law.
Upon resuming his closing argument, defense counsel argued that defendant was not the perpetrator and that the officers' identifications were the products of unintentional suggestion, resulting from the officers' fatigue and their motivations to obtain convictions. Defense counsel also asserted that the name "Popatar" contributed to the alleged suggestiveness of the identifications as did Hymel's identification of defendant from a single photograph, i.e., defendant's picture.
LSA-C.Cr.P. art. 774 which delineates the scope of closing argument provides, in pertinent part, as follows:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or *525 defendant may draw therefrom, and to the law applicable to the case.
The trial court has wide discretion in controlling the scope of closing argument. State v. Prestridge, 399 So.2d 564, 580 (La.1981). Generally, a wide latitude is allowed counsel in closing argument, but only if there is undue restriction of argument resulting in substantial prejudice is reversal required. State v. Joseph, 341 So.2d 861, 867 (La.1977); State v. Taylor, 430 So.2d 686, 692 (La.App. 2d Cir.), writ denied, 438 So.2d 575 (La.1983).
The appellate record includes a photocopy of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), which apparently was included as an appendage to defendant's written motions for a new trial and a post-verdict judgment of acquittal. Justice Brennan delivered the opinion of the Court in Wade. An examination of the photocopy of Wade, which is a copy of the opinion from the United States Supreme Court Reporter, reveals that 87 S.Ct. at 1933 addresses some of the dangers of identification evidence. After carefully considering the content of the quoted excerpt of defense counsel's closing argument to which the state objected and the photocopy of 87 S.Ct. at 1933 in the context in which the state entered its objection and the exchange which followed the objection, we are convinced that the quoted excerpt was the result of defense counsel's reading and/or paraphrasing Justice Brennan's opinion in Wade, 87 S.Ct. at 1933. The quoted excerpt closely parallels the language in Wade. We find no abuse of discretion by the trial court in refusing to allow defense counsel to continue to read and/or paraphrase from the Wade case. Clearly, the language from Wade which defense counsel was reading and/or paraphrasing was matter not in evidence, not law applicable to the case, and otherwise beyond the permissible scope of closing argument. Undoubtedly, defendant was not denied his right to counsel under the federal or state constitutions to argue the issue of mistaken identification by virtue of the restriction placed upon defense counsel's closing argument. As previously discussed, both before and after the restriction of defense counsel's closing argument, defense counsel was permitted wide latitude in arguing the issue of mistaken identification to the jury.
This assignment lacks merit.

PATENT ERROR
Because we have discovered error patent on the face of the record requiring us to vacate defendant's sentence and remand this matter for resentencing, we do not address defendant's assignments of error numbers five and six claiming that his sentence is excessive and that the trial court erred by amending defendant's original sentence without defendant or his counsel being present at the time of the amendment and absent a waiver of defendant's presence. Defendant's original sentence of twenty-five years at hard labor and his amended sentence of eighteen years at hard labor exceed the maximum statutorily authorized sentence in effect at the time the instant offense was committed. See State v. Hopkins, 367 So.2d 346, 347 (La. 1979). LSA-R.S. 40:966 B(2) (prior to its amendment by § 1 of Act 850 of 1987), the law applicable herein, provided as follows:
(2) Any other controlled dangerous substance classified in Schedule I shall, upon conviction be sentenced to a term of imprisonment at hard labor for not more than ten years and pay a fine of not more than fifteen thousand dollars.
Accordingly, we vacate defendant's sentence and remand this case to the district court for resentencing in accordance with the version of LSA-R.S. 40:966 B(2) quoted above. Following his resentencing, defendant may again appeal his sentence.
CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.