738 So.2d 706 (1999)
STATE of Louisiana
v.
Johnny DUNCAN
No. 98 KA 1730.
Court of Appeal of Louisiana, First Circuit.
June 25, 1999.
*708 Charles Shropshire, St. Francisville, Counsel for appellee State of Louisiana.
Andre' P. LaPlace, Baton Rouge, Counsel for defendant/appellant Johnny Duncan.
Before: CARTER, C.J., SHORTESS and WHIPPLE, JJ.
WHIPPLE, J.
Defendant, Johnny Duncan, was charged by bill of information with simple escape, a violation of LSA-R.S. 14:110. Following a jury trial, defendant was found guilty as charged. He was adjudicated a second felony offender and sentenced to six years imprisonment at hard labor. On appeal, this Court reversed defendant's conviction and remanded the case for a new trial due to the erroneous denial of the defense's challenge for cause of a prospective juror. See State v. Duncan, 95-KA-1631 (La. App. 1st Cir.9/27/96). On remand, the state orally amended the bill of information to specifically charge that defendant committed simple escape in violation of LSA-R.S. 14:110 A(1) and B(3) in that he intentionally departed the lawful custody of corrections officer Bob Sanders. A second trial was held, and the jury returned a verdict finding defendant guilty of attempted simple escape, a violation of LSA-R.S. 14:27 and LSA-R.S. 14:110. Thereafter, the state filed a habitual offender bill *709 of information. Following a hearing, the trial court dismissed the habitual offender proceedings against defendant. Defendant was sentenced to two and one-half years at hard labor for his conviction of attempted simple escape. He has now appealed, raising five assignments of error.

FACTS
On May 16, 1994, defendant was an inmate at Dixon Correctional Institute (DCI) in East Feliciana Parish. On that date he was in the custody of DCI corrections officer Robert (Bob) Sanders, assigned to work at the Wakefield meat processing plant in West Feliciana Parish. At some point during the day, defendant left the premises without permission and fled the state. He was later apprehended in Alabama.

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, defendant argues his criminal prosecution for simple escape violated the prohibition against multiple punishment for the same offense. Specifically, defendant argues he had already been punished for this offense through disciplinary proceedings conducted by the Department of Corrections (DOC), which resulted in his loss of good time and a fine of $1,500.00.
The Fifth Amendment to the United States Constitution and Louisiana Constitution Article I, § 15 provide that no person shall twice be placed in jeopardy for the same offense. These clauses protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and, (3) multiple punishments for the same offense. State v. Dunn, 96-0289, p. 3 (La. App. 1st Cir.11/8/96), 682 So.2d 1309, 1311. The third of these protections is at issue in the present case. Defendant contends his loss of good time credit and the imposition of a fine in the DOC disciplinary proceedings, in addition to his two and one-half year criminal sentence, constitute two punishments for the same offense.
The Louisiana Supreme Court ruled in State v. Johnson, 94-0595 and 94-1077, p. 5 (La.1/16/96), 667 So.2d 510, 513, that with respect to the definition of punishment "for purposes of double jeopardy" the Louisiana State Constitution provided no greater individual rights than the Fifth Amendment to the United States Constitution and applied federal precepts when deciding the matter. Moreover, to constitute double jeopardy the prior proceeding relied upon must have been in a court. State v. Green, 301 So.2d 590, 591 (La. 1974); State v. Coney, 258 La. 369, 379, 246 So.2d 793, 796 (La.1971); State in Interest of Dandridge, 614 So.2d 129, 130 (La.App. 4th Cir.), writ denied, 616 So.2d 684 (La.1993). Generally, action taken by a disciplinary board against a prison inmate provides no basis for a plea of double jeopardy. See Coney, 258 La. at 379, 246 So.2d at 796. Federal jurisprudence and opinions of the Louisiana Supreme Court have indicated that a government may impose both a criminal and a civil sanction with respect to the same act or omission without violating double jeopardy guarantees. Butler v. Department of Public Safety and Corrections, 609 So.2d 790, 795 (La.1992).
In both Green and Coney, the Louisiana Supreme Court ruled that prior action by the Louisiana State Penitentiary Disciplinary Board, which ordered that the respective defendants be placed in isolation and deprived of good time for an escape attempt and an escape, respectively, did not provide a basis for double jeopardy. In Dandridge, the Fourth Circuit, relying on Green, ruled that it was not a violation of the proscription against double jeopardy to administratively expel a student from school for the remainder of the school year for possessing a dangerous weapon on a school campus and to prosecute that same student in juvenile court for the same conduct. In Butler, the Louisiana Supreme *710 Court held that the suspension of driving privileges and prosecution for driving while intoxicated did not violate double jeopardy. The court stressed that the revocation of driving privileges at issue in Butler was remedial in nature.
In State v. Jefferson, 95-0171 (La.App. 4th Cir.8/23/95), 660 So.2d 917, the Fourth Circuit ruled that there was no double jeopardy violation where a defendant was prosecuted for unlawful practice of law and had his license to practice revoked for the same conduct. The court noted:
[D]ouble jeopardy is not violated when an individual is subject to both criminal sanction and administrative regulation, at least to the extent that the administrative regulation is neither penal in nature nor designed to exact retribution.
95-0171 at p. 3, 660 So.2d at 919.
Recently, in United States v. Ursery, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), the United States Supreme Court was faced with the issue of whether punishing a defendant for a criminal offense and forfeiting his property in a separate in rem civil proceeding violated the Double Jeopardy Clause. In concluding that it did not, the Supreme Court utilized a two-part test. First, were the proceedings intended to be criminal or civil in nature? Second, were the proceedings so punitive in form and effect as to render them criminal, despite legislative intent to the contrary? To satisfy the latter prong of the two-part test, the Ursery Court held that the "clearest proof" is necessary to show that the sanction is criminal and not civil. Ursery, 518 U.S. at 289, 116 S.Ct. at 2147-2148.
In the present situation, the answer to the initial Ursery inquiry is that the proceedings for forfeiture of good time credits are intended to be civil in nature. Louisiana Revised Statutes 15:571.4(B)(1) provides that an inmate who escapes from a DOC correctional facility or from the lawful custody of a law enforcement or DOC officer may forfeit all good time earned on that portion of his sentence served prior to the escape. Louisiana Revised Statutes 15:571.4(C) further provides that the DOC shall adopt rules and regulations in accordance with the Administrative Procedure Act and that a hearing shall be conducted as a disciplinary proceeding. Such an administrative disciplinary proceeding would clearly be analogous to the one present in Butler, Green, Coney, and the other cited jurisprudence.
Thus, the remaining inquiry presented herein is whether the "clearest proof" has been presented to indicate that these administrative disciplinary proceedings cannot legitimately be viewed as civil in nature and are, in fact, criminal. In State v. Sonnier, 95-1103, p. 5 (La.App. 3rd Cir.8/28/96), 679 So.2d 1011, 1013, the court noted that although the revocation of driving privileges has a punitive effect, important non-punitive goals were also served. The same is true in the instant case. Although the forfeiture of good time credit undoubtedly has a punitive effect, it provides a remedial measure for the DOC to maintain discipline in prisons. Thus, the "clearest proof" that the sanction imposed in this case was criminal in nature has not been shown herein. Based on our review of the jurisprudence as well as the circumstances presented herein, we conclude that the forfeiture of good time credit, as well as the imposition of a criminal penalty, does not constitute double jeopardy.
Nor is there any merit in defendant's contention that the imposition of a $1,500.00 fine upon him constituted double punishment. Initially, we note that a review of the exhibits introduced in connection with defendant's plea of double jeopardy indicates that the "fine" he refers to was actually an order that he pay restitution to the DOC in the stipulated amount of $1,500.00.
In any event, in Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), the United States Supreme Court considered the issue of *711 whether the imposition of a monetary fine as an in personam civil penalty was punishment for purposes of the Double Jeopardy Clause. The Hudson Court noted in particular that the Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for the same offense ." 522 U.S. at ___, 118 S.Ct. at 493. In order to determine whether a civil penalty constitutes double jeopardy, the Supreme Court in Hudson formulated a test essentially the same as that outlined in Ursery with respect to civil in rem forfeitures. The initial inquiry in determining whether a particular punishment is criminal or civil in nature is a matter of statutory construction, dependent upon the intent of the legislature.
However, even in cases where the legislature "has indicated an intention to establish a civil penalty," courts must inquire further into whether the statutory scheme is "so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." Hudson, 522 U.S. at ___, 118 S.Ct. at 493 (citations and internal quotation marks omitted). In making this determination, the Supreme Court indicated that the factors delineated in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-68, 9 L.Ed.2d 644 (1963), provided useful guideposts, as follows: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. The Hudson Court further explained that these factors "must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Hudson, 522 U.S. at ___, 118 S.Ct. at 493 (citations and internal quotation marks omitted), quoting United States v. Ward, 448 U.S. 242, 249, 100 S.Ct. 2636, 2641-42, 65 L.Ed.2d 742 (1980).
Applying this analysis to the present case, it is clear that the requirement that defendant pay $1,500.00 in restitution does not violate the Double Jeopardy Clause. Louisiana Revised Statutes 15:875, provides, in pertinent part, that an inmate may be required to pay restitution for expenses incurred as a result of his escape or attempted escape, as follows:
B. (1) Restitution may be obtained by corrections services from an offender for expenses incurred by the department or any other law enforcement agency in any escape or attempt to escape from the custody of any facility of the department.
(2) The amount of restitution shall be the actual costs incurred, including but not limited to property damage, staff transportation and lodging, salaries for the duration of the chase, and costs of return of the inmate.
* * * * * *
D. The determination of restitution by the department shall be by disciplinary proceeding in accordance with the rules and regulations of the department. The department may promulgate and adopt, in accordance with the Administrative Procedure Act, specific rules and regulations governing the determination of restitution. (footnote omitted).
The fact that the legislature specifically provided that the proceedings to impose restitution shall be disciplinary proceedings indicates it intended the proceedings to be civil. As noted in the discussion above with respect to the forfeiture of good time credits, such administrative disciplinary proceedings are civil in nature.
Moreover, there is little evidence, much less the "clearest proof" required, suggesting *712 that a restitution order under LSA-R.S. 15:875 B is so punitive in form or effect as to render it criminal, despite legislative intent otherwise. First, an order that restitution be paid does not involve an affirmative disability or restraint, such as imprisonment. See Hudson, 522 U.S. at ___, 118 S.Ct. at 496. Further, in addition to the fact that disciplinary proceedings have traditionally not been regarded in Louisiana as punishment for double jeopardy purposes, it is clear that the purpose of LSA-R.S. 15:875 B is remedial rather than punitive, i.e., to allow reimbursement to the Department of Corrections for incurred expenses. Finally, a restitution order under this provision clearly is not excessive in that it only authorizes the recovery of actual expenses incurred as a result of an escape or attempted escape. While the conduct for which restitution was ordered may also be criminal, this fact is insufficient to render the fine criminally punitive. See Hudson, 522 U.S. at ___, 118 S.Ct. at 496. It is true that requiring a defendant to pay restitution may have some deterrence effect, a traditional goal of criminal punishment. However, the Supreme Court recognized in Hudson that this factor alone is insufficient to render a sanction criminal, since deterrence may serve civil as well as criminal goals. See Hudson, 522 U.S. at ___, 118 S.Ct. at 496. Based on our review of all relevant factors, we find that the restitution order in this case clearly did not constitute a criminal penalty for double jeopardy purposes.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
In this assignment of error, defendant argues the trial court abridged his right to cross-examination and to present a defense.
While cross-examining Jewell Williams, the manager of DCI corrections records, defense counsel asked her what amount of restitution defendant was ordered to pay as a result of disciplinary proceedings. Before she answered, the prosecutor made a relevancy objection, which the trial court sustained. Defense counsel then requested that he be allowed to introduce into evidence that portion of defendant's file containing a disciplinary restitution form, dated June 15, 1994, which contained essentially the same information defense counsel had sought to elicit from Ms. Williams. The trial court denied the request.[1] On appeal, defendant argues the trial court's refusal to allow his questioning of Ms. Williams or the introduction of documentation as to the restitution ordered in the disciplinary proceedings precluded him from developing the defense that he had already been punished for the simple escape. We disagree.
A criminal defendant has the constitutional right to present a defense. Due process affords the defendant the right of full confrontation and cross examination of the State's witnesses. U.S. Const.Amend. 6; La. Const. Art. 1 § 16; State v. Van Winkle, 94-0947, p. 5 (La.6/30/95), 658 So.2d 198, 201. Evidentiary rules may not supersede the fundamental right to present a defense. Van Winkle, 94-0947 at p. 5, 658 So.2d at 202.
"Relevant evidence" is evidence having any tendency to make existence of any fact that is of consequence to determination of action more probable or less probable than it would be without evidence. LSA-C.E. art. 401. In questions of relevancy, much discretion is vested in the trial court. Such rulings will not be disturbed on appeal in the absence of a *713 showing of manifest abuse of discretion. State v. McCutcheon, 93-0488, p. 8 (La. App. 1st Cir.3/11/94), 633 So.2d 1338, 1343, writ denied, 94-0834 (La.6/17/94), 638 So.2d 1093. Ultimately, questions of relevancy and admissibility are discretion calls for the trial court, and its determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. State v. Mosby, 595 So.2d 1135, 1139 (La.1992).
In this case, the fact that defendant may have been ordered in disciplinary proceedings to pay restitution as a result of his escape clearly had no relevancy to establishing the existence or nonexistence of any of the essential elements of the charged offense. Moreover, the purported "defense" referred to by defendant, i.e., that he had already been punished for the simple escape, is in essence a plea of double jeopardy. Louisiana Code Criminal Procedure article 594 provides that a claim of double jeopardy "shall be tried by the court alone." Thus, defendant was not entitled to present this "defense" to the jury. Accordingly, the trial court did not err in sustaining the state's relevancy objection, and did not thereby curtail defendant's right to present a defense or confront his accusers.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBERS 3 AND 5
In his third assignment of error, defendant argues the trial court erred in not allowing defense counsel to argue in closing argument that defendant had escaped from a work release program. Defendant contends that simple escape from a work release program is a lesser included offense to the charge of simple escape which provides for a lesser penalty than simple escape. In assignment of error number five, defendant asserts the trial court erred in not instructing the jury that it could return a responsive verdict finding defendant guilty of escaping from a work release program pursuant to LSA-R.S. 14:110 A(2). Because defendant's argument in each of these assignments of error is based primarily on the theory that simple escape from a work release program is a responsive verdict to the charge of simple escape, we will consider that issue first.
An accused in Louisiana is entitled to have the trial court instruct the jury on the law on the charged offense and on all responsive offenses. LSA-C.Cr.P. arts. 803, 814, 815. When an accused requests and is refused an instruction on a lesser and included offense, or when the accused timely objects to the court's failure to give a responsive offense instruction to which defendant is statutorily entitled, the conviction may be reversed. See State ex rel. Elaire v. Blackburn, 424 So.2d 246, 248 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).
Louisiana Code of Criminal Procedure article 814, which provides a list of legislatively approved responsive verdicts, does not contain responsive verdicts to the charges of simple escape. Louisiana Code of Criminal Procedure article 815 provides that, in all cases not provided for in article 814, the following verdicts are responsive: guilty; guilty of a lesser and included grade of the offense; or not guilty. Lesser and included grades of the charged offense are those in which all of the essential elements of the lesser offense are also essential elements of the greater offense charged. See State v. Porter, 93-1106, p. 5 n. 6 (La.7/5/94), 639 So.2d 1137, 1140 n. 6.
Contrary to defendant's assertions in the instant case, simple escape from a work release program is not a lesser included offense to the crime of simple escape. Louisiana Revised Statutes 14:110 A provides that simple escape can be committed by any of the following means:
(1) The intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where *714 such person is legally confined, or from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections.
(2) The failure of a criminal serving a sentence and participating in a work release program authorized by law to report or return from his planned employment or other activity under the program at the appointed time.
(3) The failure of a person who has been granted a furlough under the provisions of R.S. 15:833 or R.S. 15:908 to return to his place of confinement at the appointed time.
Further, depending upon the manner in which the escape was committed, LSA-R.S. 14:110 B provides different penalties for simple escape, as follows:
(1) A person who is participating in a work release program as defined in Paragraph A(2) of this Section and who commits the crime of simple escape shall be imprisoned with or without hard labor for not less than six months nor more than one year and any such sentence shall not run concurrently with any other sentence.
(2) A person who fails to return from an authorized furlough as defined in Paragraph A(3) of this Section shall be imprisoned with or without hard labor for not less than six months nor more than one year and any such sentence shall not run concurrently with any other sentence.
(3) A person imprisoned, committed, or detained who commits the crime of simple escape as defined in Paragraph A(1) of this Section shall be imprisoned with or without hard labor for not less than two years nor more than five years; provided that such sentence shall not run concurrently with any other sentence.
Thus, escaping from a work release program is merely an alternate method of committing the offense of simple escape for which the legislature has provided a special sentencing range. The district attorney in this case chose to charge defendant with violating LSA-R .S. 14:110 A(1) by escaping from the custody of a correctional officer. Louisiana Code of Criminal Procedure article 61 provides that a district attorney may decide whom, when, and how to prosecute a case. See State v. Freeman, 597 So.2d 1153, 1155 (La.App. 1st Cir.), writ denied, 599 So.2d 311 (La.1992). When conduct is criminal under more than one provision, it is within the district attorney's discretion to choose under which provision to proceed, even when the respective penalties differ. See Freeman, 597 So.2d at 1155. Thus, since simple escape from a work release program is not a lesser included offense to the crime of simple escape, the trial court did not err in refusing to charge the jury that it could return a verdict of guilty of simple escape from a work release program.
Moreover, for the same reasons, the trial court did not impermissibly restrict defense counsel's closing argument. The record reveals that, during closing argument, defendant counsel began to discuss the definition of a work release program. At that point, the prosecutor objected and the following colloquy occurred, as follows:
BY MR. MEANS [PROSECUTOR]: Objection, he's reading from the law, that's not correct.
BY MR. LAPLACE [DEFENSE COUNSEL]: He argued that in his closing, Judge.
BY THE COURT: Well ... you can argue about the facts but we're not going to have you tell this jury what the law is, I will tell them what the law is. And I've already ruled about that, Mr. LaPlace. So, do not read anything from any other law except the provisions of RS [sic], what is it
BY MR. MEANS: I believe it's 14:110.
BY THE COURT:RS [sic] 14:110A(1), B(3) or Section D, those are *715 the, that is the law that is applicable to this case.
BY MR. LAPLACE: Your Honor, I'm allowed to argue the facts or give the responsive verdict.
BY THE COURT: Mr. LaPlace, the responsive verdict in this case is Attempted Simple Escape.
BY MR. LAPLACE: With all due respect to the Court
BY THE COURT: Mr. LaPlace, I'm gonna tell you one more time, do not read anything from the law that you just proposed to read.
BY MR. LAPLACE: Is the Court saying that I cannot argue a responsive verdict in this case, is that the Court's position, I cannot argue the facts, the responsive verdict?
BY THE COURT: The responsive verdict in this case is Attempted Simple Escape you can argue Attempted Simple Escape, if you would like to, Mr. La-Place.
BY MR. LAPLACE: Your honor, I'm gonna argue the case as the facts are presented, if the Court wants to limit my argument I'll have to ask for an immediate instanta [sic] writ to the Appellate Court on that issue. I've never had anyone tell me I can't argue the facts of the case.
BY THE COURT: Mr. LaPlace, you can argue the facts of the case within the confines of the law that I have directed you to do, if you don't choose to do that then I will have to do what I have to do.
After noting an assignment of error, defense counsel then completed his closing, which included argument as to the facts of this case, including the nature of the location from which defendant escaped and the allegation that defendant was "in school" at the time. Thus, defendant was not actually prohibited from arguing the facts of this case. Rather, the trial court merely prevented him from arguing that the jury could return a responsive verdict of guilty of simple escape from a work release program.
Louisiana Code of Criminal Procedure article 774 delineates the scope of closing argument, in pertinent part, as follows:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The trial court has wide discretion in controlling the scope of closing argument. Generally, a wide latitude is allowed counsel in closing argument, and only if there is undue restriction of argument resulting in substantial prejudice is reversal required. State v. Williams, 560 So.2d 519, 525 (La. App. 1st Cir.1990).
We find no abuse of discretion by the trial court in this case in refusing to allow defense counsel to argue to the jury that it could return a verdict, i.e., guilty of simple escape from a work release program, that was not responsive to the charge against defendant. The law that defense counsel wanted to read to the jury regarding an alternate method of committing simple escape under LSA-R.S. 14:110 A(2) (i.e., by failing to return from a work release program) was not the law applicable to the case, since it was not germane to a violation of LSA-R.S. 14:110 A(1) (the section under which defendant was charged) and did not pertain to a valid responsive verdict. See Williams, 560 So.2d at 524-525; State v. McDaniel, 454 So.2d 351, 353 (La. App. 4th Cir.1984). Accordingly, the trial court did not unduly restrict the scope of defense counsel's closing argument.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER 4
In this assignment of error, defendant argues the evidence presented by the state was insufficient to support his conviction for simple escape.
*716 The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the state proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821. The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Louisiana Code of Criminal Procedure article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Riley, 91-2132, p. 8 (La.App. 1st Cir.5/20/94), 637 So.2d 758, 762.
Louisiana Revised Statute 14:110 provides, in pertinent part, that:
A. Simple escape shall mean any of the following:
(1) The intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where such person is legally confined, or from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections.
(2) The failure of a criminal serving a sentence and participating in a work release program authorized by law to report or return from his planned employment or other activity under the program at the appointed time.
(3) The failure of a person who has been granted a furlough under the provisions of R.S. 15:833 or R.S. 15:908 to return to his place of confinement at the appointed time.
* * * * * *
D. For purposes of this Section, a person shall be deemed to be in the lawful custody of a law enforcement officer or of the Department of Public Safety and Corrections and legally confined when he is in a rehabilitation unit, a work release program, or any other program under the control of a law enforcement officer or the department.
Thus, there are alternate methods of committing simple escape under LSA-R.S. 14:110. In the instant case, defendant was charged with violating LSA-R.S. 14:110 A(1) by escaping from the lawful custody of a correctional officer. In order to prove this charge, the state was required to prove the following essential elements: (1) intentional departure (2) under circumstances in which human life was not endangered (3) by an imprisoned person (4) from the lawful custody of a correctional officer. See State v. Bullock, 576 So.2d 453, 455 (La.1991).
At trial, the state introduced documentary evidence establishing that defendant was sentenced on May 10, 1993 to four years at hard labor with the Department of Corrections for a first degree robbery conviction. Ms. Jewel Williams, the DCI corrections record manager, testified that defendant was incarcerated at DCI on May 16, 1994, with a scheduled release date of November 15, 1994. She further indicated that defendant was a trustee assigned to the Wakefield meat packing plant as a member of an inmate work crew which worked and took meat-cutting classes during the day.
Bob Sanders also testified at trial. He stated that he was a DCI correctional officer assigned to the Wakefield meat processing plant on May 16, 1994. On that date, defendant was a member of the inmate work crew that Sanders drove by bus to the Wakefield plant. The Wakefield facility was surrounded by a ten-foot fence, sections of which were topped with barbed wire or razor wire. All of the inmates assigned to work at Wakefield, including defendant, were trustees. Sanders further testified that the inmates were not allowed to go in and out of the gates at *717 will; they were allowed to go outside the fence only when accompanied by him. Sanders indicated he walked the inside perimeter of the Wakefield fence every day to check its condition.
On the date in question, Sanders conducted several routine head counts throughout the day to ensure that all inmates were present, which they were. However, as the inmates were preparing to board the bus to return to DCI in the afternoon, Sanders conducted another head count which came up one inmate short. Sanders did a recount, then took a roll call, to which defendant did not respond. A search of the plant failed to locate defendant. Sanders testified that he did not authorize defendant to leave the facility.
Several weeks later, defendant was apprehended in Montgomery, Alabama. Captain Mark Maple was one of the DCI officers who traveled to Montgomery to escort defendant back to Louisiana. He testified that, at some point during the trip, defendant spontaneously stated that he had gone over the fence at Wakefield after dinner[2] and met his wife at a church just south of the plant where she was waiting. Defendant's wife had a vehicle, which they drove into Mississippi.
On appeal, defendant contends the evidence was insufficient because the circumstances of his departure from Wakefield were not proven beyond a reasonable doubt, despite the testimony of Captain Maples that defendant told him he had climbed the fence and met his wife nearby, after which they drove to Mississippi. Specifically, defendant argues that Maples' testimony was unbelievable and was impeached by inconsistent testimony Maples gave at defendant's first trial. The inconsistency defendant refers to is the fact that Maples testified at defendant's first trial that the group that went to Alabama to retrieve defendant traveled in two cars, Warden Cain's vehicle and a Jeep. Maples testified at the first trial that he drove the Jeep all the way back to Louisiana from Alabama, and that defendant made the statements in question at rest stops along the way. In contrast, at defendant's second trial, Captain Maples testified that he rode in Warden Cain's vehicle with defendant most of the way back from Alabama, moving to the Jeep at some point when they stopped for gas, but then moving back to Cain's vehicle the next time they refueled. He further testified that defendant made the statements in question while they were riding in Warden Cain's vehicle.
Defendant is correct that Captain Maples' testimony at the second trial was inconsistent with his prior testimony with respect to the vehicle in which he traveled back to Louisiana and where defendant made the statements in question. However, it is not alleged that there was any inconsistency in Maples' testimony as to the substance of what defendant told him.
In reaching its decision, the jury had before it all of the evidence which defendant claims impeached the testimony of Captain Maples, rendering it unbelievable. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Thomas, 589 So.2d 555, 570 (La.App. 1st Cir.1991). A determination of the weight of the evidence is a question of fact, not subject to appellate review. State v. Holiday, 598 So.2d 524, 530 (La.App. 1st Cir.), writ denied, 600 So.2d 659 (La.1992). On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn *718 a jury's determination of guilt. State v. Hendon, 94-0516, p. 7 (La.App. 1st Cir.4/7/95), 654 So.2d 447, 450.
After carefully reviewing the evidence, we believe a rational juror, viewing the evidence in the light most favorable to the state, could have concluded the state proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that all of the essential elements of simple escape under LSA-R.S. 14:110 A(1) were established.
This assignment of error lacks merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] We note that, although the trial court refused to admit the June 15, 1994 restitution form as a trial exhibit to be viewed by the jury, the court did allow defendant to introduce this document in connection with defendant's plea of double jeopardy, which is discussed in assignment of error number one.
[2] The term "dinner" is obviously meant to refer to lunch, which the inmates were served at Wakefield.