822 So.2d 780 (2002)
STATE of Louisiana
v.
Ronnie WILLIAMS, Jr.
No. 2001 KA 2009.
Court of Appeal of Louisiana, First Circuit.
June 21, 2002.
*781 Walter P. Reed, District Attorney, Dorothy Pendergast, Metairie, Attorneys for State of Louisiana.
Gwendolyn Brown, Baton Rouge, Attorney for Ronnie Williams, Jr.
Before: GONZALES, KUHN, CIACCIO, JJ.[1]
PHILIP C. CIACCIO, Judge Pro Tem.
Defendant, Ronnie Williams, Jr., was charged in 1999, by a bill of information with two counts of distribution of cocaine within one thousand feet of a drug free zone (property used for school purposes or recreational park areas), in violation of Louisiana Revised Statutes 40:967A(1) and 40:981.3, and one count of attempted distribution of cocaine within one thousand feet of a drug free zone in violation of Louisiana Revised Statutes 40:979 and 40:981.3. Williams entered pleas of not guilty to all three counts. After a jury trial, a verdict was rendered finding Williams guilty as charged on all three counts. The trial court sentenced Williams for each of his two convictions for distribution of cocaine within a drug free zone to fifteen years imprisonment at hard labor, without benefit of probation, parole or suspension of *782 sentence, and fined him $50,000.00 on each conviction. For his conviction for attempted distribution of cocaine within a drug free zone, the trial court sentenced Williams to serve seven and one-half years at hard labor, without benefit of probation, parole or suspension of sentence and fined him $25,000.00.[2] All sentences were to be served concurrently. Williams filed a pro se motion to amend his sentence, which the trial court subsequently denied. In an unpublished decision, this court denied Williams's request for a writ of mandamus, noting that the matter was moot, in that the trial judge acted on the motion to amend sentence on March 5, 2001.[3] The matter now comes before this court on appeal.
Finding no merit in Williams's assignments of error, we affirm the convictions and sentences in Counts I through III.
In the initial brief filed, Williams listed two assignments of error:
1. The evidence is insufficient to support the conviction because the evidence established beyond a reasonable doubt the affirmative defense of entrapment.
2. The evidence is insufficient to support the conviction because the evidence established beyond a reasonable doubt the affirmative defense of entrapment in regard to the location of the sale. That is, the evidence showed that the defendant was entrapped into committing this crime within a drug free zone.
By order of this court, Williams was allowed to supplement the original brief, wherein an additional assignment of error was listed:
S-1. The trial court failed to grant the defendant's motion to quash.

FACTS
The St. Tammany Parish Sheriffs Office decided in the fall of 1998 to undertake a proactive undercover sting operation to infiltrate the criminal element of St. Tammany Parish and try to recover stolen property, weapons, narcotics and the like. In furtherance of this goal, detectives rented a small commercial building located on Highway 190 in Slidell and furnished it with speakers, videocassette recorders, tools, musical instruments, other movable property, and one display cabinet filled with bongs, roach clips, water pipes, cigarette rolling papers and various drug paraphernalia. The name of the business was "Fast Bucks Buy and Sell" and the understanding between the officers was that anyone who stopped and looked at the display case containing the drug paraphernalia would be engaged in conversation concerning the procurement of narcotics.
Though the operation was positioned across the highway from Tammany Trace, a recreational park sometimes used by the schools of St. Tammany Parish, Detective Chad Hartzog testified that the building was selected for its overall suitability and because it was "the right size" and in the "right location." Williams first visited the business and sold property when he was sixteen years of age. During his next visit, the undercover agents asked Williams to get them some cocaine. When Williams provided the agents with a white powdered substance purported to be cocaine, he was paid by check drawn on the Parish National Bank of Covington on the account of Fast Bucks Buy and Sell. The purported cocaine, upon scientific analysis, proved to be counterfeit. When the officers *783 found that the cocaine was "bunk", they began calling Williams at his mother's home, telling him that they knew where he lived and that he needed to comply with their original request.[4] No charges were filed against Williams for this sale of a counterfeit drug as a juvenile. After Williams reached his seventeenth birthday, on July 16, July 19, and August 6, 1999, he sold the detectives with real cocaine and was paid by check on each occasion. Videotapes that were introduced into evidence and viewed by the jury showed each transaction in detail, but no tapes were shown of Williams first being engaged by the detectives or first selling counterfeit cocaine. The sting operation ended on August 23, 1999, with the promotion of a raffle of a wide-screen television, Caribbean cruise and free party. Some suspects came to the party and were arrested while the remainder were picked up in a parishwide roundup. Williams was arrested and remained in jail through his trial in July 2000.

ASSIGNMENTS OF ERROR ONE AND TWOENTRAPMENT
Assignments of error one and two entail an evaluation of the defense of entrapment.
An appellate court, in reviewing any criminal conviction, must determine whether the overall evidence, viewed in a light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the accused was guilty of each and every element of the offense.[5] This standard of review is incorporated in Louisiana Code of Criminal Procedure article 821 and is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.[6] When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides that the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence.[7]
Williams does not contend that the evidence was insufficient to establish two counts of cocaine distribution and one count of attempted cocaine distribution all occurring within a drug free zone. Instead, he asserts the defense of entrapment. However, that defense will only arise when law enforcement officials, for the purpose of garnering evidence of crime, originate the idea of crime and then induce another person to committing the crime, when that person is not otherwise predisposed to do so.[8] The defense is designed to deter the police from implanting criminal ideas in innocent minds and promoting crimes that would not otherwise have been committed.[9] State authorities should certainly not induce citizens to commit crimes, and the defense of entrapment is recognized to prevent shocking police inducement of the perpetration of a crime.[10] In their zeal to enforce the law, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the government may prosecute. Where the government *784 has induced an individual to break the law and the defense of entrapment is at issue, the prosecutor must prove beyond a reasonable doubt that the defendant was predisposed to commit the criminal act prior to first being approached by government agents.[11] An entrapment defense will not lie, however, if the police or agents merely furnish the defendant who is predisposed to commit the crime the opportunity to do so.[12]
Defendant bears the burden of proving the defense of entrapment by a preponderance of the evidence.[13] Although Williams suggests that he proved beyond a reasonable doubt that the defense of entrapment prevailed, the evidentiary standard for the trier of fact is proof by a preponderance of the evidence.
Several salient and uncontested facts are apparent in this case and militate in favor of Williams's proof by a preponderance of the evidence that he was entrapped into selling cocaine within a drug free zone in contravention of Louisiana Revised Statutes 40:967A(1), 40:979, and 40:981.3. Though the cumulative effect of these factors neither swayed the jury, nor dictates reversal by this court, they include:
1) Williams was sixteen years of age and a juvenile when he first met the undercover agents and committed a felony criminal offense.
2) His first offense was sale of a counterfeit drug rather than the cocaine requested, an offense for which he was never charged.
3) Williams was asked by the officers to procure drugs when he first entered the store for other reasons.
4) He was telephoned by the undercover agents numerous times after the first (counterfeit) sale and told by the agents that they knew where he lived and that he needed to comply with the original agreement to get cocaine.
5) He accepted checks written by the undercover agents for his procurements, hardly the actions of an accomplished drug dealer or someone predisposed to distribute cocaine.
6) Williams did not have any previous convictions or arrests for possession or sale of narcotics.
7) The location for the purchase of drugs was situated by the police, whether by coincidence or choice, within close proximity to Tammany Trace, a park or recreational area used by the schools of St. Tammany Parish. This circumstance led to Williams being charged under the enhancement provisions of Louisiana Revised Statute 40:983.1.
Though these seven factors tend to support the affirmative defense of entrapment, Williams did not prove by a preponderance of the evidence that he was coerced into doing something that he was not predisposed to do voluntarily, freely and of his own accord. By the time he made three separate sales, Williams had reached the age of criminal majority and could have walked away from the three separate illegal transactions. The jury, as the trier of fact, is accorded great discretion in deciding the truthfulness of testimony *785 and the weight and credibility of each portion of the evidence presented to it. In the instant case, the jury had the benefit of three separate videotapes that showed each transaction in great detail. The tapes depict an energetic, industrious, enthusiastic seller of cocaine. Williams negotiates, haggles over price and quantity, and watches meticulously as the drugs are measured on an electric scale in the cameras' full view. On several occasions, Williams even asks if he can buy the scale or one like it. The tapes tell the tale and the jury saw fit to convict Williams. Both assignments of error concerning the defense of entrapment are meritless.

ASSIGNMENT OF ERROR S-1 DENIAL OF MOTION TO QUASH
Williams filed a motion to quash based upon two grounds: (1) the transactions allegedly occurred within a private residence, and (2) the lack of compliance with Revised Statute 17:405(B). On July 20, 2000, in chambers, and outside the presence of the jury, defense counsel argued the first ground of the motion to quash. He suggested to the court that since the sale of narcotics had allegedly taken place within a private residence, the defendant was exempt from the enhancement provisions of the law. The assistant district attorney averred that there was no exception in this case since the sales had taken place completely within a commercial establishment. The trial judge denied the motion to quash. Later, the second ground for the motion to quash, wherein defendant asserted that the governing authority had not published a plot map of the drug free zone in compliance with the legislative mandate of Revised Statute 17:405(B), was taken up. The trial judge denied that portion of the motion to quash as well. Defense counsel objected to the denial of the motion to quash and noted his objection for the record.
On appeal, the defendant does not argue the private residence ground of the motion to quash. Instead, he only raises the issue of the failure to comply with Louisiana Revised Statute 17:405(B), which provides:
The local governing authority which has jurisdiction over zoning matters in which each drug free zone is located shall publish a map clearly indicating the boundaries of each drug free zone in accordance with the specifications in Subsection A. The drug free zone map shall be made an official public document and placed with the clerk of court for the parish or parishes in which the drug free zone is located.
In 1989, the Legislature enacted the crime of violation of the controlled dangerous substances law on or near school property.[14] The language of Revised Statute 17:405(B) is mandatory rather than discretionary and it states that the governing authority SHALL publish a map clearly indicating the boundaries of each drug free zone and SHALL make such a map part of the public record of the parish wherein the drug free zone exists. However, compliance with Revised Statute 17:405(B) is not required in order to establish a violation of Revised Statute 40:983.1. A review of the jurisprudence interpreting Revised Statute 40:981.3 reveals no cases that are directly on point with the instant case or that make it a requirement that the plot map be of record in order to prove a violation of the law. The statute does not contain any map, notification, or sign requirements. In fact, Revised Statute 40:981.3(B) states, "Lack of knowledge that the prohibited act occurred on or within one thousand feet of school or drug *786 treatment facility property shall not be a defense." This lack of knowledge provision has been upheld as constitutional.[15] The trial judge's denial of Williams's motion to quash was correct and within his discretion, did not constitute reversible error, and thusly, this assignment of error is without merit.
Finding no merit to any assignment of error urged by defendant, we affirm the convictions and sentences in Counts I through III.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] See Louisiana Revised Statute 40:967(B)(4)(b) & 981.3(E) prior to their amendments by 2001 La. Acts No. 403, § 4.
[3] State ex rel. Williams v. State, XXXX-XXXX (La.App. 1 Cir. 6/28/01) (unpublished opinion).
[4] We note that Detective Hartzog denied calling and/or threatening Williams.
[5] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[6] State v. Duncan, 98-1730, p. 15 (La.App. 1 Cir. 6/25/99), 738 So.2d 706, 716.
[7] Id.
[8] State v. Brand, 520 So.2d 114, 117 (La. 1988).
[9] Id.
[10] Id.
[11] Jacobson v. U.S., 503 U.S. 540, 548-49, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992).
[12] State v. Moody, 393 So.2d 1212, 1216 (La. 1981).
[13] State v. Chatman, 599 So.2d 335, 347 (La. App. 1st Cir.1992).
[14] La. R.S. 40:981.3.
[15] State v. Brown, 94-1290, pp. 6-8 (La.1/17/95), 648 So.2d 872, 876-877.