WELCH, J.
| ¡.The defendant, Malik Shabazz, was charged by bill of information with aggravated second degree battery, a violation of La. R.S. 14:34.7. He pled not guilty and, following a jury trial, was found guilty as charged. Pursuant to an agreement with the State wherein it would not file a habitual offender bill and would dismiss his pending charges, the defendant was sentenced to seven years at hard labor. He filed motions for new trial, postverdict judgment of acquittal, and to reconsider sentence, all of which were denied. The defendant now appeals, urging one counseled and four pro se assignments of error.[1] For the following reasons, we affirm the defendant’s conviction and sentence.
FACTS
On December 20, 2009, Officer Christopher Rogers was dispatched to a house located at 428 Edison Street in Baton Rouge, Louisiana.' Upon entering the residence, he observed the victim, Eric Moore, bleeding from his neck. The victim indicated that he had been stabbed by the defendant.
The night before the stabbing, a party was held on the patio of the home where the defendant lived, which backed up to the property where the house on 428 Edison Street was located. The defendant brought his 32-inch television outside for the guests to watch football. While cleaning up the next day, the defendant realized the television was missing. He walked to the 428 Edison Street house and asked the victim and Ronnie Brown,[2] who were watching football on television, about the missing television. According to the victim, the defendant was hostile and loud. The victim told the defendant that he did not know anything |sabout the television. The defendant returned fifteen-to-twenty minutes later. This time, he was more abrupt and hostile. He stated, “Y’all are going to find my [expletive] T.V.” Then, he ran up to the victim, cut him, and ran. The victim testified that the knife used by the defendant was a cheese knife, which he described as having a two-inch blade and a marble handle. He remembered it as having been used at the party the night before the stabbing for the cheese display. The victim was treated by paramedics on the scene for a three-to-five inch laceration to *729 the left side of his neck and transported to the hospital for further treatment.
The defendant testified at trial. According to his testimony, the victim asked him if he could have the television prior to the night of the party, and the defendant told him that he could purchase his own television. The defendant claimed that he set the television inside after the party. The victim was helping clean the next day by bringing things back inside the house. The defendant washed down the patio area outside, and when he came back inside, the television was missing. He walked to the Edison house and asked the victim and Brown if they knew anything about the missing television. He then called the man who owned the property and the homes, Chris Pilley. According to the defendant, Pilley told him to tell the victim and Brown to leave the Edison house. The defendant claimed that when he told the men to leave, they jumped up, one grabbed him, and a brawl ensued. The defendant testified that the victim attempted to punch him, but he got loose, punched both of the men, and ran home. The defendant denied having any type of weapon.
EXCESSIVE SENTENCE
In his sole counseled assignment of error, the defendant argues that the sentence imposed is excessive. He complains that the district court failed to consider the factors for consideration in imposing a sentence and those surrounding |4the offense and the offender. In support of his argument, the defendant contends that he and the victim have reconciled, he is a parent of three children who depend on him, he was an honor student at a community college, was gainfully employed, and served as a Mason.
Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one’s sense of justice. State v. Reed, 409 So.2d 266, 267 (La.1982).
Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the district court to consider when imposing sentences. While the entire checklist of Article 894.1 need not be recited, the record must reflect that the district court adequately considered the criteria. State v. Brown, 2002-2231 (La.App. 1st Cir.5/9/03), 849 So.2d 566, 569. A district court judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Landos, 419 So.2d 475, 478 (La.1982). On appellate review of a sentence, the relevant question is whether the district court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Thomas, 98-1144 (La.10/9/98), 719 So.2d 49, 50 (per curiam).
“Whoever commits the crime of aggravated second degree battery shall be fined not more than ten thousand dollars or imprisoned, with or without hard labor, |Rfor not more than fifteen years, or both.” La. R.S. 14:34.7 (prior to amendment by 2012 La. Acts No. 40, § 1). The district *730 court sentenced the defendant to seven years at hard labor.
Before sentencing, the district court ordered a presentence investigation report (“PSI”). It revealed that the defendant was a fourth-felony offender and had several arrests and convictions under the name “Darwin Riley” as well as “Malik Shabazz.”[3] According to the PSI, the defendant has been afforded supervision in the past and only successfully completed it once. The PSI recommended that the defendant be sentenced to the maximum amount of time allowed by law for the charge.
The testimony presented at trial established that the defendant was in the process of obtaining an associate’s degree at a community college, was employed, was a parent, and served as a Mason. Thus, the district court was aware of the facts that the defendant argues it should have considered in imposing the sentence. Also, although the defendant contends that the parties have reconciled, the victim testified that the defendant “was one hundred percent wrong for what he did to me. I didn’t — It was not deserving at all. I just want to see justice served.”
At sentencing, the court indicated'that the prosecutor stated that if the court sentenced the defendant to seven years at hard labor, he would forego filing a habitual offender bill of information against the defendant and would dismiss his pending charges for failing to register as a sex offender. The court pointed out that the defendant, as a potential fourth-felony habitual offender, could face life imprisonment, and noted for the record that the defendant was convicted of sexual battery in 1992'; attempted possession of a firearm by a felon in 1996; and possession of marijuana, second offense, in 2001. As a potential fourth-felony | (¡habitual offender, the defendant’s sentence would have been “not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life[.]” See La. R.S. 15:529.1A(4)(a).
The defendant argues that the district court failed to comply with Article 894.1. However, the goal of Article 894.1 is the articulation of the factual basis for a sentence, not rigid or mechanical compliance with its provisions. See Láñelos, 419 So.2d at 478. Even when a district court assigns no reasons, the sentence will be set aside on appeal and remanded for resen-tencing only if the record is either inadequate or clearly indicates that the sentence is excessive. See La.C.Cr.P. art 881.4D; State v. Harris, 601 So.2d 779, 783 (La.App. 1st Cir.1992).
Considering the court’s apparent review of the PSI, the circumstances surrounding the crime, and the benefit received by the defendant pursuant to the agreement with the State, we find no abuse of discretion by the district court. There is ample justification in the record for the seven-year sentence imposed on the defendant. Accordingly, the sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive.
MOTION FOR NEW TRIAL
In his first pro se assignment of error, the defendant argues that the district court erred by failing to rule on his pro se motion for new trial prior to sentencing. He claims that although his motion is stamped by the district court as being filed on March 18, 2013, the date of sentencing, it was actually filed on March *731 8, 2013, pursuant to the “mailbox rule.”[4] He argues that his sentence should be vacated due to the district court’s alleged failure to rule on his motion prior to sentencing.
At the sentencing hearing, defense counsel indicated that the defendant agreed to the proposed sentence of seven years and stated that he filed a pro se |7motion for new trial. The court responded that it did not have the motion. Defense counsel then explained that he spoke with the prosecutor and opined that the motion should be dismissed in light of the sentencing agreement reached between the parties. The court then asked the defendant what he would like to say. The defendant apologized for the “matter [escalating] to what it is.” He explained that his motion was based on his realization that his trial was not commenced within two years of the filing of his bill of information.[5] The court pointed out that the defendant had three bench warrants and that the “business of time limitation [was] not before this court.” The court then explained that the prosecutor agreed not to file a habitual offender bill against the defendant if the court sentenced him to seven years at hard labor and that it intended to sentence him in accordance with that agreement. The defendant responded, ‘Tes, ma’am.” The court then sentenced the defendant.
Motions for new trial must be filed and disposed of before sentencing. La.C.Cr.P. art. 853. The failure of the district court to rule on a motion for new trial is an error to be considered under La.C.Cr.P. art. 920(2) and requires that the sentence be vacated. See State v. Cockerham, 2012-0465 (La.App. 1st Cir.11/14/12), 111 So.3d 384, 386.
At the sentencing hearing, the court indicated that it did not have the motion. Further, defense counsel withdrew the motion prior to sentencing by stating that it “should be dismissed in light of our agreement that we’ve reached with [the prosecutor] and with the court.” Nevertheless, the parties proceeded to discuss it with the district court stating that the defendant’s argument should have been |sraised pretrial. The court then imposed the agreed-upon sentence without any objection by the defendant. Therefore, we find no merit in this assignment of error.
JURY SELECTION
In his second pro se assignment of error, the defendant argues that the State’s use of peremptory challenges to exclude African American jurors violated his rights, under the equal protection clause of the Fourteenth Amendment to the United States Constitution. The transcript of the jury selection is not in the record before us. The minutes indicate that the State used one peremptory challenge to exclude a female African American potential juror. However, the minutes do not indicate that the defendant made a Batson[6] objection.
Batson held that an equal protection violation occurs if a party exercises a peremptory challenge to exclude a pro *732 spective juror on the basis of a person’s race. See also La.C.Cr.P. art. 795C-E. If the defendant makes a prima facie showing of discriminatory strikes, the burden shifts to the State to offer racially-neutral explanations for the challenged members. The neutral explanation must be one which is clear, reasonable, specific, legitimate and related to the particular case at bar. If the race-neutral explanation is tendered, the district court must decide, in step three of the Batson analysis, whether the defendant has proven purposeful discrimination. A reviewing court owes the district court judge’s evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. State v. Elie, 2005-1569 (La.7/10/06), 936 So.2d 791, 795.
Since the defendant did not make a Batson objection, he failed to preserve this claim for review. See La.C.Cr.P. art. 841A (“An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence”); State v. Trahan, 93-1116 (La.App. 1st Cir.5/20/94), 637 So.2d 694, 704 (“[t]he | agrounds for objection must be sufficiently brought to the court’s attention to allow it the opportunity to make the proper ruling and prevent or cure any error”). Therefore, this assignment of error is without merit.
INEFFECTIVE ASSISTANCE OF COUNSEL
In his third pro se assignment of error, the defendant argues that he was denied the right to effective assistance of counsel. Specifically, the defendant contends that a conflict of interest existed because his trial counsel represented Brown, a state witness, in an unrelated matter. The defendant argues that defense counsel concealed Brown’s lengthy criminal history during cross-examination because of his prior representation. Thus, the defendant claims that he was denied effective assistance of counsel.
Both the United States Supreme Court and the Louisiana Supreme Court have given great consideration to the relationship between conflicting interests and effective assistance of counsel Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); State v. Wille, 595 So.2d 1149 (La.), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). As a general rule, Louisiana courts have held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant he is representing. State v. Cisco, 2001-2732 (La.12/3/03), 861 So.2d 118, 129, cert. denied, 541 U.S. 1005, 124 S.Ct. 2023, 158 L.Ed.2d 522 (2004).[7] An actual conflict of interest is established when the defendant proves that his attorney was placed in a situation | Ulinherently conducive to divided loyalties. State v. Kahey, 436 So.2d 475, 484 (La.1983). The issue of conflicting loyalties usually arises in the context of joint *733 representation, but it can also arise when an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was a client of the attorney. State v. Tart, 93-0772 (La.2/9/96), 672 So.2d 116, 125, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996). The Louisiana Supreme Court has indicated that a defense attorney required to cross-examine a current or former client on behalf of a current defendant suffers from an actual conflict of interest. See Cisco, 861 So.2d at 130.
The time at which a conflict of interest issue is raised is determinative of the standard to be applied in evaluating the claim. Where a defendant raises the issue prior to trial, the district court judge is required either to appoint .separate counsel or to take adequate steps to ascertain whether the risk of a conflict of interest was too remote to warrant separate counsel. Wille, 595 So.2d at 1153. However, where a defendant does not raise the issue of conflict of interest until after the trial, the defendant is required to show that “an actual conflict of interest adversely affected his lawyer’s performance” in order to establish a Sixth Amendment violation. Cuyler, 446 U.S. at 348, 100 S.Ct. at 1718.
On direct examination, Brown disclosed that he had a 1994 robbery conviction and that he was seventeen years old at the time. He also testified that he had a 1999 conviction for contributing to the delinquency of a minor. On cross-examination, the following colloquy occurred:
[Defense counsel]: What other convictions do you have?
[Brown]: Contributing to the delinquency of a juvenile.
[Defense counsel]: You talked about that.
[Brown]: A D.W.I. and — as a matter of fact, you defended me on an armed robbery. But, yeah, that and the D.W.I., yeah.
InDPefense counsel]: Anything else? [Brown]: Not — I mean, you know, there might be some stuff Its [sic] been a long—
[Defense counsel]: Convictions. Convictions.
[Brown]: I don’t — I don’t remember. It’s been a long time. A long journey, man.
Defense counsel then proceeded to question him about the night of the party.
The defendant, who did not raise the conflict issue prior to or during the trial, has not demonstrated that an actual conflict of interest adversely affected (materially limited) his counsel’s performance during the trial. During cross-examination, the situation was not one of divided loyalties. There is no showing on the record that defense counsel was faced with a situation in which he was forced to choose between the interests of the defendant and Brown. Contrary to the defendant’s assertion, defense counsel did not attempt to conceal Brown’s criminal history. Instead, the record demonstrates that defense counsel questioned Brown regarding his prior criminal history and attempted to elicit convictions not revealed by Brown on direct examination. After Brown indicated that defense counsel represented him on an armed robbery charge, defense counsel asked, “Anything else?” When Brown stated that there “might be some stuff[,]” defense counsel clarified that he was only asking about convictions. Brown answered that he did not remember and that it had been a long journey. Only after Brown’s response did defense counsel move on to questions about the night of the party. Further, Brown’s testimony was not the only evidence of the defen *734 dant’s guilt, Moore also testified as to the events that took place on the night of the party and the next day. Thus, the defendant has not demonstrated that he was actually prejudiced[8] by the claimed conflict, and this assignment is without merit.
h,RIGHT TO SPEEDY TRIAL
In his last pro se assignment of error, the defendant argues that the district court erred in granting the State’s oral motion to continue over his objection. The defendant argues that the district court’s grant of the State’s motion effectively delayed his trial beyond the two-year limitation set forth in La.C.Cr.P. art. 578A(2).
The granting or denial of a motion for continuance rests within the sound discretion of the district court, and its ruling will not be disturbed on appeal absent a showing of a clear abuse of discretion. An oral motion for a continuance presents nothing for review on appeal. State v. Brown, 95-0755 (La.App. 1st Cir.6/28/96), 677 So.2d 1057, 1062.
A motion to quash is the proper vehicle to assert that the time limitation for the commencement of trial has expired. La.C.Cr.P. art. 582(7). Upon expiration of the time limitations provided in Article 578A for commencement of trial, the court shall, on motion of the defendant, dismiss the indictment, and there shall be no further prosecution against the defendant for that criminal conduct. The right of dismissal is waived unless the motion to quash is made prior to trial. See La. C.Cr.P. art. 581. Moreover, when the defendant has brought an apparently meritorious motion to quash based on a violation of the statutory time limits, the State bears a heavy burden to demonstrate either an interruption or a suspension of the time limit such that prescription will not have tolled. State v. Lathers, 2005-0786 (La.App. 1st Cir.2/10/06), 924 So.2d 1038, 1043, writ denied, 2006-1036 (La.11/3/06), 940 So.2d 659.
The defendant did not file a motion to quash the indictment or a motion for speedy trial. Had the defendant filed such motions, he would not have been successful, because his trial commenced within the time limitations set forth in Article 578, and the State’s motion to continue did not delay his trial beyond the |1sthose limitations. Article 578 provides for a two-year time limitation (from the date of institution of the prosecution) within which the trial of a defendant accused of a non-capital felony must be commenced. Pursuant to La.C.Cr.P. art. 580A, the statutory time limits are suspended when a defendant files a motion to quash or other preliminary plea. When the prescriptive period is suspended, the relevant period is not counted, and the running of the time limit resumes when the court rules on the pending motion, although in no case shall the State have less than one year after the ruling to commence trial. La.C.Cr.P. art. 580A; Lathers, 924 So.2d at 1043. A preliminary plea is any pleading or motion filed by the defense that has the effect of delaying trial, including properly filed motions to quash, motions to suppress, or motions for continuance. Lathers, 924 So.2d at 1043, Joint motions to continue likewise suspend the period of limitation. State v. Simpson, 506 So.2d 837, 838 (La.App. 1st Cir.), writ denied, 512 So.2d 433 (La., 1987). An interruption occurs when the State is unable, through no fault of its own, to try a defendant within the period specified by statute. Louisiana Code of Criminal Procedure article 579A(2) provides that the two-year period will be in *735 terrupted if the defendant “cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state.” Once the cause of interruption disappears, the two-year time limit begins anew. See La.C.Cr.P. art. 579B.
The defendant was charged on August 13, 2010. The matter was set for trial on March 2, 2011. Due to another trial in progress that day, the court ordered that the matter be continued, and the State selected June 1, 2011, as the new trial date. The defendant and his counsel were given notice of the new trial date in open court. On June 1, the defendant failed to appear and the court issued a bench warrant for his arrest. The defendant appeared on June 10, 2011, and the bench warrant was recalled. The court continued the trial until October 11, 2011. On [14October 11, the State and defense counsel made a joint motion to continue “for status,” and the matter was continued until December 12. On December 12, on the defendant’s motion, the matter was continued until January 19, 2012. The matter was again continued on motion of the defendant until February 24, 2012. On February 24, 2012, on motion of defense counsel, the court ordered that the matter be assigned for trial on May 14, 2012. The defendant and his counsel were given notice in open court. On May 14, 2012, the defendant failed to appear and a bench warrant was issued for his arrest. The defendant appeared before the court on May 17, 2012, and the bench warrant was recalled. The court continued trial until September 26. On September 26, the State orally moved for a continuance. The court granted the motion over the defendant’s objection. Trial was scheduled for January 7, 2013, and jury selection began on that date.
The defendant’s failure to appear on his trial date of June 1, 2011, constituted an interruption of the prescriptive period set forth by Article 578. Once he appeared on June 10, the two-year time limit began to run anew. After a joint motion to continue and two motions to continue filed by the defendant, the matter was set for trial on May 14, 2012. The defendant again failed to appear, constituting another interruption of the prescriptive period that did not begin to run anew until he appeared on May 17, 2012. His trial began January 7, 2013. Thus, the defendant’s trial was commenced within the time delay prescribed by Article 578, and no violation of the statutory time limitation occurred in this case.
it. This assignment of error is without merit.
REVIEW FOR ERROR
The defendant requests that this court examine the record for error under La. C.Cr.P. art. 920(2). This court routinely reviews the record for such errors,, whether or not such a request is made by a defendant. Under Article 920(2), we are limited in our review to errors discoverable by a mere inspection of the 11fipleadings and proceedings without inspections of the evidence.
After a careful'review of the record in these proceedings, we have found no reversible errors. See State v. Price, 2005-2514 (La.App. 1st Cir.12/28/06), 952 So.2d 112, 123-25 (en banc), writ denied, 2007-0130 (La.2/22/08), 976 So.2d 1277.
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. The defendant’s motion for another extension of time to file his brief and to supplement the appeal record with the "docket report,” a transcript of the jury voir dire examination, and the district attorney's file was denied by this court. State v. Shabazz, 2014-0431 (La.App. 1st Cir.8/5/14).

. Brown served as the bartender at the December 19th party and was also at the Edison house at the time of the incident.

. The defendant testified that he changed his birth name, Darwin Riley, in 2003 because "after [he] got out of the penal system [he] changed [his] whole life.”

. The "mailbox rule” applies in cases involving pro se inmates seeking judicial review, and a document is considered "filed” when it is delivered to prison officials for forwarding to the district court. See Tatum v. Lynn, 93-1559 (La.App. 1st Cir.5/20/94), 637 So.2d 796, 799.

. In addition to the time limitation issue discussed at the sentencing hearing, the defendant argued in his motion for new trial that file State withheld information and that his trial counsel was ineffective. He also argued that there were issues with the jury selection process. The motion was stamped "denied” and signed by the district court judge on May 17, 2013.

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

. Courts often look to the Rules of Professional Conduct in determining whether a conflict exists, and the Louisiana Supreme Court has determined that the ethical rules which regulate attorneys’ law practices have been recognized as having the force and effect of substantive law. The burden of proving disqualification of an attorney or other officer of the court rests on the party making the challenge. To meet this burden in the context of an alleged conflict due to representation of one client (a criminal defendant on trial) while being forced to cross-examine a former client, a defendant must establish under tire Rules of Professional Conduct that his attorney was “materially limited” in such cross-examination. State v. Letell, 2012-0180 (La.App. 1st Cir.10/25/12), 103 So.3d 1129, 1140, writ denied, 2012-2533 (La.4/26/13), 112 So.3d 838.

. See Cisco, 861 So.2d at 130 n. 18 (noting that where an objection is made to the claimed conflict after trial, the defendant must show that he was actually prejudiced).